895 So.2d 311 (2004)
James David RICHBURG, Sr., and Mary Ann Richburg
v.
James David RICHBURG II and Nancy Richburg.
2030098.
Court of Civil Appeals of Alabama.
July 9, 2004.
J. McGowin Williamson of Williamson & Williamson, Greenville, for appellants.
David K. Hogg, Dothan, for appellee James David Richburg II.
YATES, Presiding Judge.
On February 11, 2002, James David Richburg II, the father, filed a petition seeking temporary and permanent custody of the child, who was in the primary physical custody of Nancy Richburg, the mother. On February 15, 2002, the trial court awarded temporary custody to the father. On April 3, 2002, James David Richburg, *312 Sr., the paternal grandfather, and Mary Ann Richburg, the paternal grandmother, moved to intervene in the action, seeking to establish grandparent visitation pursuant to § 30-3-4.1, Ala.Code 1975. On April 16, 2002, the court entered an order concerning the father's petition, stating that "after conference of the parties and stipulation of the attorneys, this matter is continued indefinitely."
On June 7, 2002, the trial court held a hearing on the grandparents' motion to intervene. At the hearing, the trial court noted on the record that the mother and the father had agreed to a settlement, whereby the parties would have joint legal custody with the father having primary physical custody of the child. On November 6, 2002, the trial court entered an order allowing the grandparents to intervene but denying their request for grandparent visitation. On November 21, 2002, the grandparents filed a motion for a new trial. Following a hearing on that motion, the trial court, on December 13, 2002, entered an order entitled "Amended Order" that was essentially the same order that had been entered on November 6, 2002, denying the grandparents visitation.
The December 13 order stated:
"This matter having come before the Court on June 7, 2002, on the Motion to Intervene for the Purpose of Establishing Grandparent Visitation Rights filed by [the grandparents], and, on December 10, 2002, on a Motion for New Trial and/or Reconsideration filed by [the grandparents] and, based on the pleadings and testimony taken in open Court, the Court finds as follows:
"1. That [the grandparents] are the grandparents of [the child]. That [the grandparents] had been substantially involved in said minor child's life, providing both financial and personal support, with said minor child residing in their home for a great deal of his life. That the evidence is undisputed that it would be in the best interest of said minor child that said grandparents be entitled to visit with said child and further that the failure to allow said visitation would be against the child's best interest and would cause substantial harm to the child.
"2. That [the father] of [the child], strenuously objects to any court ordered visitation and [the mother] has not appeared before the Court to express her opinion on the matter.
"3. Specifically, the Court finds that it is undisputed, and, in fact, admitted by the father (Plaintiff) that is definitely in the child's best interests that he be allowed to visit with his paternal grandparents; that under present Alabama case and statutory law, parental right to control over one's minor child includes the right to deny visitation privileges to non-parental parties even when such visitation is in the best interests of the child.
"It is therefore, Ordered, Adjudged and Decreed that [the grandparents] be and are hereby allowed to intervene in the above styled matter, but the Court interprets the existing statutory and case law to prohibit this Court from allowing these grandparents visitation over the objection of one of the parents."
On October 1, 2003, the grandparents filed a motion asking the trial court to certify its November 6, 2002, and December 13, 2002, orders as final, pursuant to Rule 54(b), Ala. R. Civ. P. In the motion, the grandparents contended that the father's petition for permanent custody had not been adjudicated. On October 1, 2003, the trial court entered an order certifying its December 13, 2002, order as a final judgment. On October 28, 2003, the grandparents filed a notice of appeal.
*313 The father argues that the grandparents' appeal is untimely because it was not filed with 42 days of the entry of the December 13, 2002, order. An appeal ordinarily lies only from a final judgment. § 12-22-2, Ala.Code 1975; Bean v. Craig, 557 So.2d 1249 (Ala.1990). "A final judgment is necessary to give jurisdiction to this court on appeal." Marsh v. Wittmeier, 280 Ala. 172, 173, 190 So.2d 920, 920 (1966). A judgment is final if it disposes of all the claims and controversies between all the parties. Heaston v. Nabors, 889 So.2d 588 (Ala.Civ.App.2004).
Section 34-3-21, Ala.Code 1975, which applies to settlement agreements occurring at the trial level, provides that "[a]n attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." A settlement agreement announced in open court may also be binding. Jones v. Blanton, 644 So.2d 882 (Ala.1994); Jones v. Stedman, 595 So.2d 1355 (Ala.1992).
In Rudolph v. First Southern Federal Savings & Loan Ass'n, 414 So.2d 64 (Ala.1982), the borrowers appealed from a partial summary judgment entered in favor of the defendant on a negligent-inspection claim. The trial court's order left pending certain claims, but the partial summary judgment was made final pursuant to Rule 54(b). However, the record was unclear as to the disposition of a conversion claim. Neither the defendant's summary-judgment motion nor the trial court's Rule 54(b) order addressed this issue. The borrowers, in a postjudgment motion, asked that the court amend its order so as to clearly state that the summary judgment applied only to the negligent-inspection claim. The trial court entered an order stating that the borrower's motion to amend had been denied "by agreement." The supreme court "suspected" that the "agreement" referred to by the trial court was a reference to the defendant's answer to the complaint in which it stated that it was holding the unpaid portion of a loan and offered to pay that sum as the trial court may deem appropriate. The supreme court determined that the conversion claim was still before the trial court because "an agreement of the parties, as well as responsive pleadings, not reduced to a court order, do not constitute an adjudication of a pending claim." 414 So.2d at 72.
In McGlothlin v. First Alabama Bank, 599 So.2d 1137 (Ala.1992), the attorney who had represented mortgagors in a foreclosure sale sought to intervene in a suit brought by the junior mortgagee against the mortgagors and the senior mortgagee. The trial court had entered a summary judgment in favor of the junior mortgagee, and the parties had subsequently agreed to a settlement, when the attorney's motion to intervene was filed almost one year after the summary judgment had been entered. However, the trial court granted the attorney's motion to intervene for the purposes of considering the attorney's "motion for a new trial/motion to reconsider order on summary judgment," and the court then found that its summary-judgment order was not final (specifically finding that there was no Rule 54(b) language, that the court's order did not address the right to redemption, that the order did not divest the mortgagors of their interest, and that the order did not set out the amount the senior mortgagee was owed). Finding that the parties had settled all matters after the entry of the summary judgment, the trial court ultimately dismissed the case. The issues on appeal were whether the trial court's order was final and whether the court erred in allowing the attorney to intervene. The mortgagors *314 argued that the summary-judgment order should have been deemed final because the parties later settled the dispute. The supreme court, citing Rudolph, held that the subsequent settlement did not constitute an adjudication of a pending claim.
Although a settlement agreement may be binding and enforceable, the settlement agreement in the present case had not been reduced to a judgment and, therefore, the court's order of December 13, 2002, was not a final order. Accordingly, the grandparents' appeal, filed within 42 days of the trial court's October 1, 2003, Rule 54(b) order certifying the judgment as final is timely.
The grandparents argue that the trial court erred in denying their petition for visitation under § 30-3-4.1, because the trial court found that the child would be substantially harmed if the grandparents were not awarded visitation.
In 2000, the United States Supreme Court issued an opinion in which six Justices of that Court affirmed the Washington Supreme Court's decision striking down Washington's nonparental-visitation statute as an unconstitutional infringement upon a parent's fundamental right to rear his or her children. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Troxel, the Supreme Court stated that, with regard to child-visitation rights, the "right of parents to make decisions concerning the care, custody, and control of their children" is a fundamental right protected by the Due Process Clause. 530 U.S. at 66, 120 S.Ct. 2054. The Supreme Court struck down the Washington statute, which provided that" `any person'" at "`any time,'" could seek visitation rights with a child and that such visitation may be granted if "`visitation may serve the best interest of the child.'" 530 U.S. at 67, 120 S.Ct. 2054 (emphasis omitted). In Troxel, the paternal grandparents filed a petition seeking visitation with the two children of their deceased son. The mother opposed the petition.[1] The trial court granted visitation to the grandparents, and the mother appealed to the Washington Court of Appeals, which reversed the trial court's order and dismissed the grandparents' petition for lack of standing. The Washington Supreme Court held that although the grandparents had standing, the statute was unconstitutional because the United States Constitution prohibits the state from interfering with parents' rights to rear their children, absent a showing of harm or potential harm to the child. The Washington Supreme Court also held that the statute was overly broad in allowing "any person" at "any time" to seek visitation and in requiring only that the visitation serve the best interest of the child.
The United States Supreme Court affirmed the Washington Supreme Court's judgment, concluding that the "breathtakingly broad" statute, as applied to the mother, violated her due-process rights to make decisions concerning the care, custody, and control of her children. In reaching its conclusion, the Court noted that the statute contained no requirement that the parent's decision be given any presumption of validity or any special weight. 530 U.S. at 70, 120 S.Ct. 2054. The Court held that because the grandparents had not alleged that the mother was unfit, it must be presumed that the mother had acted in the best interests of her children. 530 U.S. at 68, 530 U.S. 57. The Court stated "[t]he decisional framework employed by the *315 [Washington trial court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." Troxel, 530 U.S. at 69, 120 S.Ct. 2054. Rather, the trial court presumed the opposite and placed the burden on the mother to prove that visitation would not be in her children's best interests. 530 U.S. at 69-70, 120 S.Ct. 2054. Notably, the Supreme Court declined to determine whether, as a condition precedent to awarding nonparental visitation, the Due Process Clause requires a showing of harm or potential harm to the child.
In Alabama, the legislature enacted § 30-3-3, Ala.Code 1975, in 1980, which abrogated the common-law rule that grandparents possessed no legal right of visitation and which created a statutory right to grandparent visitation when the parents were divorcing.[2] In 1983, the legislature repealed § 30-3-3 and adopted § 30-3-4, with the intent of expanding "grandparental rights to visitation to include the situation involving the death of one of the grandchild's parents." Mills v. Parker, 549 So.2d 97, 98 (Ala.Civ.App.1989). In 1999, the legislature repealed § 30-3-4 and adopted § 30-3-4.1, expanding grandparent visitation in any one of several situations: when one or both the child's parents have died; upon the dissolution of the child's parents' marriage; upon abandonment of the child by one or both of the parents; when the child is born to unmarried parents; and when one or both of the child's parents, who are still married, uses their parental authority to prohibit a relationship between the grandparent and the child. In 1999, § 30-3-4.1 provided for a rebuttable presumption in favor of grandparent visitation.
In R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001), the Court of Civil Appeals addressed the constitutionality of § 30-3-4.1. The case involved a paternal grandfather's petition for visitation with his two minor grandchildren; the grandchildren's parents were still married. The trial court granted the grandfather visitation. This court reversed the judgment of the trial court. In reversing the judgment, a majority of the court determined that the rebuttable presumption in favor of grandparent visitation set forth in § 30-3-4.1(e) was invalid. In reaching that determination, the main opinion, citing Troxel v. Granville, supra, stated that the rebuttable presumption in favor of grandparent visitation was unconstitutional, because that presumption opposed the" `traditional presumption that a fit parent will act in the best interests of his or her child.'" 812 So.2d at 371 (quoting Troxel, 530 U.S. at 69, 120 S.Ct. 2054). Certiorari review by the Alabama Supreme Court was not sought.[3]
L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002), also involved a constitutional challenge to § 30-3-4.1. Judge Thompson, who authored the main opinion, in which Judge Pittman concurred, wrote that in order for § 30-3-4.1 to be applied constitutionally, a grandparent seeking visitation bears the burden of showing, by clear and convincing evidence, that the best interest *316 of the child is served by awarding grandparent visitation. Judge Thompson wrote that although the factors the trial court should consider in determining whether to allow visitation set out in § 30-3-4.1(d) do not specifically mention the parent's own determination regarding visitation with respect to the child, the factors do not exclude consideration of that determination as a factor. He concluded that the requirement that the court consider "other relevant factors" allows the court to give great weight, as it must, to a parent's decision in determining whether to grant a grandparent visitation. 826 So.2d at 187.
Judge Murdock, in a special writing, in which Presiding Judge Yates concurred, wrote that before a court may substitute its decision for that of a fit custodial parent as to whether grandparent visitation is in a child's overall best interest, there must be a threshold showing of substantial harm to the child caused by the parent's decision. That is, where a child has enjoyed a significant relationship with the grandparent so that arbitrarily depriving the child of the relationship would cause serious psychological or emotional harm if the requested visitation by the grandparent is not granted, evidence of that harm must be shown, and this showing must be by clear and convincing evidence.
Presiding Judge Yates wrote specially in L.B.S. v. L.M.S., summarizing the points on which a majority of the court was in agreement:
"[A] majority of this court agrees: (1) that parents have a fundamental right to make decisions regarding the care, custody, and control of their children and because a determination of grandparent-visitation rights directly interferes with a parent's fundamental right to rear his or her children, a strict-scrutiny analysis applies to such an infringement upon a fundamental right; (2) that there is a presumption that a fit parent acts in the best interest of his or her child and that this presumption places on the grandparent petitioning for visitation the burden of showing by clear and convincing evidence that the best interest of the child is served by awarding visitation if substantial harm to the child by not awarding visitation is shown; and (3) that this court should not invalidate the grandparent-visitation statute on constitutional grounds if by reasonable construction, it can be given a field of operation within constitutionally imposed limitations."
826 So.2d at 187 (Yates, P.J., concurring in the judgment of reversal only). Judge Crawley dissented, writing that the grandparent-visitation statutes, Ala.Code 1975, §§ 30-3-4.1 and 26-10A-30, are unconstitutional per se. 826 So.2d at 199. Certiorari review by the Alabama Supreme Court was not sought.
The record in the present case indicates that the child is now two years old. The mother and the father divorced in 2001. Before their divorce, they lived in a mobile home on the grandparents' land. In March 2001, the mother and the child began living with the grandparents, while the father continued to live in the mobile home. The mother and the father had joint legal custody of the child, with the mother having primary physical custody. The father moved out of the mobile home in August 2001 so that the mother and the child would have their own place to live. However, the grandmother testified that the mother moved out of the grandparents' home in September 2001 and left the child. The father testified that he continued his visitation with the child and that he "didn't always know when [the mother] wasn't there." The father moved in with the grandparents in January 2002.
*317 The father testified that in early March 2002 he was attempting to rock the child, who was fussy, to sleep and the grandparents began "fussing" at the father because he would not let them comfort the child. The grandfather attempted to strike the father while the child was in the father's lap. When the father took the child to the bathroom to change the child's diapers, the grandfather struck the father. The grandfather testified that the father was not able to calm the child and that he wanted to ride the child on the tractor to calm him down. The grandfather admitted confronting the father in the bathroom and stated that he struck the 26-year-old father because of the father's "attitude."
On March 27, 2002, the grandparents telephoned the police when the father attempted to pick up the child from their home. Both grandparents testified that the mother had left the child with them. The father eventually obtained a court order requiring the grandparents to return the child. The grandmother testified that since the child has left her home, when she has seen him, he has seemed depressed, unhappy, and on one occasion "scratch[ed] himself just all over like a person with a nervous disorder."
The father has since remarried and his wife has two boys and a girl. He testified that the child fits in well with his new siblings. The father stated that he does not intend to prevent the child from seeing the grandparents and that, in fact, he has allowed visitation while this action was pending. The father testified that the grandparents have caused problems with the day-care facility where the child stays. The grandmother admitted telephoning the day-care facility to check on the child. The father testified that the grandmother took the child to have a haircut even though the father had told her not do so because he had an appointment set for the child the next week. When the grandparents requested weekly visitation, the trial court noted that, during weeks when the mother has visitation,
"[t]hat would put you having him two nights, two days and [the mother] having him three days. That would leave him with his father two days. That would make the grandparents-the mother visiting, the mother who does not have custody visiting for three days with you having two days and [the father] having two days. I just wanted to point that out to you. Okay. That's all."
The father testified that he believed that it was in the child's best interests that the child be with him and the mother and that the child have a relationship with the grandparents. He testified that he intended for the child to have visitation with the grandparents at his discretion as to the time of that visitation. When asked whether the grandparents should have overnight visitation, the father testified:
"Over the past year whenever I would go for my visitation when [the mother] still had custody of [the child], to get [the child] for my weekend visitation I was either denied to be allowed to carry [the child] away from their house and [the grandparents] would cause problems and trouble with me trying to pick him up. It would be three hours of confrontation before I could take [the child] and it kind of established a pattern of wanting to control what I did and did not do with [the child] and that continued and it got worse. Then in January when we filed for custody of [the child] I was living there. Things kind of backed off but since I moved out of there, things have gotten worse. They called the police on me at their home and tried to bully and tell me what I could do and what I could not do. And tell me I couldn't take my child.

*318 "To be honest with you all that led up to me being kicked out of the home and because of the fact that I had to go through the court system to get my son with me just living there and being present, having custody of him it kind of scares me that they might be desperate and I would have a hard time with them being worried about them taking him off somewhere and not telling me. I'm just not comfortable with it at all.
"Q. Has [the grandmother] ever said she would take him off and hide him out?
"A. Yes, she has."
In its order, the trial court determined that it could not award grandparent visitation over the father's objection, even though the court had found that grandparent visitation was in the best interest of the child and that it would cause substantial harm to the child to be denied such visitation.
Our caselaw, applying the principles espoused in Troxel, supra, to § 30-3-4.1, does not provide a parent with an absolute veto over grandparent visitation. There would essentially be no need for a grandparent-visitation statute providing for court-ordered visitation if either parent's objection would automatically foreclose grandparent visitation.
Although the trial court erred in concluding that § 30-3-4.1 and existing caselaw prohibit grandparent visitation when a parent objects to such visitation, that error does not mean that the grandparents are automatically entitled to court-ordered visitation. We note that the trial court specifically made a finding of substantial harm to the child if grandparent visitation was not awarded. If the record supports the trial court's finding of substantial harm, then the trial court should have awarded grandparent visitation over the father's objection. The father argues, however, that the trial court erred in finding that the child would be substantially harmed if the grandparents were not awarded court-scheduled visitation.
In reviewing whether the grandparents presented clear and convincing evidence that the child would be substantially harmed by the father's decision to deny them set visitation, we note that the child is very young. Although the record demonstrates that the grandparents have been deeply involved in the child's life, the record does not contain sufficient evidence to justify the state's interference with the father's fundamental right to make decisions regarding the care, custody, and control of the child. At best, the record contains a few statements by the grandmother that the two-year-old child appeared depressed or unhappy without daily contact with the grandparents. Moreover, the record indicates that the grandparents have attempted to disrupt the father's ability to carry out his responsibilities as a parent, as evidenced by the grandfather's striking the father and the incidents of the grandmother's interference with day care and taking the child for a haircut against the father's wishes.
The trial court stated in its order that the father admitted that it is "definitely in the child's best interests that he be allowed to visit with his paternal grandparents." The father has not foreclosed visitation with the grandparents; rather, he has testified that he would continue to allow the visitation but that he did not want court-scheduled visitation that would interfere with his parental rights and the mother's parental rights.
The trial court erred in denying visitation on the ground that it was prohibited from awarding grandparent visitation over the father's objection. However, this court can affirm the judgment of the trial court "if it is proper on any legal basis, even if the trial court gives a wrong reason." *319 Gooch v. Gooch, 643 So.2d 1382, 1384 (Ala.Civ.App.1994). Accordingly, we affirm the trial court's judgment denying the grandparents court-ordered visitation with the child.
The father's request for an attorney fee on appeal is granted in the amount of $1,000.
AFFIRMED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
CRAWLEY, J., concurs in the result, with writing.
CRAWLEY, Judge, concurring in the result.
As I have previously written, see R.S.C. v. J.B.C., 812 So.2d 361, 373 (Ala.Civ.App.2001)(Crawley, J., concurring in the result), I am of the opinion that § 30-3-4.1, Ala.Code 1975, "is per se, or facially, unconstitutional." Accordingly, while I concur in the result reached in the main opinion, I do not share the opinion that the grandparents in this case could have presented any evidence that would have entitled them to visitation with the child over the father's objection.
NOTES
[1] Although the mother did not completely oppose visitation, she wanted more limited visitation than the grandparents had requested.
[2] In 1966, our supreme court affirmed a trial court's award of grandparent visitation because the child had spent eight years living with her maternal grandparents. Kewish v. Brothers, 279 Ala. 86, 181 So.2d 900 (1966). Kewish appears to be an aberration, and we note that in support of its opinion affirming the visitation award the court cited a child-custody case between a grandparent and a parent. See Parks v. Parks, 275 Ala. 613, 157 So.2d 212 (1963)(grandmother awarded custody for nine months with the father having custody for three months).
[3] In 2003, the legislature amended § 30-3-4.1 to omit the rebuttable presumption in favor of grandparent visitation.