307 So.2d 703

**Louise R. LATHAM**

v.

**Rayford H. LATHAM.**

**Civ. 412.**

Court of Civil Appeals of Alabama.

Feb. 5, 1975.

Cloud, Berry, Ables, Blanton & Tatum, Huntsville, for appellant.

Lammons, Bell & Sneed, Huntsville, for appellee.

HOLMES, Judge.

This is a divorce case. The appellant-wife appeals from the provisions of the decree relating to support for herself. Additionally, appellant contends that the divorce should have been granted on the grounds of adultery and that the trial court erred in allowing evidence of condonation when this defense had not been specially pleaded by appellee-husband.

Appellant brought suit for divorce on the grounds of adultery and incompatibility of temperament. She sought support, a division of the property and custody of the minor child of the parties. Appellee-husband filed a cross bill in which he admitted incompatibility of temperament.

After a hearing *ore tenus* a final decree was entered, divorcing the parties on the ground of incompatibility, awarding certain real and personal property to each party and custody of the minor child to appellee-husband.

The tendencies of the evidence presented revealed the following:

The parties were married April 1, 1946; two children were born of the marriage, one of whom is a minor at this time. Since 1952 they have resided in the Huntsville area and up until his retirement on March 23, 1973, appellee served with the security force at Redstone Arsenal.

Appellant has been employed on a few occasions during the marriage, the last time working as a saleslady for $1.65 an hour. She has had two disc operations on her back.

Appellee suffers some disability resulting from a war injury and receives a small amount each month ($51) for this. He also receives $7,200 a year retirement benefit.

While employed by Redstone Arsenal, appellee "moonlighted" as a contractor. Appellee's schedule during this period was to be at the job site at 6:30 A.M. to check on his contracting work. He would work his shift at Redstone Arsenal then return to the contracting job site often staying until 7:30–8:00 P.M. There is testimony that appellant was not in favor of this second line of employment and did not encourage appellee in his endeavor. Nevertheless, he has been successful and has in-

creased his income appreciably. He devotes full time to this work now that he has retired.

For approximately the last nine years of the marriage appellee has had an affair with another woman. In 1972, appellant apparently became suspicious and hired a private detective. Appellant confronted appellee with the evidence gathered by the private eye on August 8, 1972, and filed for a divorce within a month.

At this point appellee attempted to save the marriage. His testimony indicated his attempts at reconciliation and also was to the effect that he had not been with the other woman since the summer of 1972. Appellee also testified that since the filing of the divorce he had lived off and on with appellant at her request and consent and that he had engaged in sexual intercourse with her. Appellant, after denying it at first, did admit to sexual intercourse with appellee after the filing for divorce. She also admitted to sleeping with appellee after the filing, a fact also testified to by the couple's son.

Despite his efforts for reconciliation by appellee, and the admission of sexual intercourse by appellant, the evidence is conclusive that incompatibility of temperament existed. In fact, both parties admitted this and neither wished to "save" the marriage.

. The evidence shows that the parties jointly owned a home, completely paid for, and also a lake cabin with a mortgage of about $8,000. The value of the home was estimated at about $30,000 while that of the lake cabin was about $18,500.

As a result of his "moonlighting" endeavors, appellee has become involved in several business partnerships.

Appellee has a 50% interest in S & L Investors. This partnership owns three parcels of land. The Pearl Street lots, one of the parcels, are vacant with a value of $8,000. They produce no income and have no mortgage. The value of appellee's

share of the remaining parcels, the Church Street lot and the Wynn Drive lots, is about $400,000. These lots produce about $36,000 a year income to appellee. However, there is a mortgage on them for about $440,000, of which appellee expects to pay half even though he is legally liable for the entire amount.

Appellee has a 50% interest in La Con Corporation. No income has been produced by the properties of La Con Corporation. The value of them is estimated to be $112,000 and the mortgage on the properties is the same as the value—$112,000. Appellee also testified that it would cost another $28,000 to get clear title to one of the parcels of land.

Appellee also has a one-third interest in Willowbrook, Inc., formed to build a shopping center. This corporation has borrowed $255,000 and also owes another $43,000 on a building located on the proposed site.

Additionally, appellee owns a one-eighth interest in Arcadia Investors. The value of this property is about $500,000, making appellee's interest worth approximately $60,060. There is a mortgage on the land of $30,000. Appellee receives a monthly income of $755.20 from this property. After the payment for the mortgage he actually receives $325 a month. The mortgage was to be paid off by October 1, 1974.

Viewed in one light, the evidence reveals that appellee does possess substantial property interest, approximately $565,000. However, also revealed by the evidence, is the fact that appellee has substantial debts. Appellee himself estimated that his indebtedness, personal and collective, is about $850,000, and it appears from the record that of this amount his primary liability is approximately $400,000.

Based upon the above introduced evidence, the trial court specifically entered a decree which provided for the following:

Appellant received appellee's one-half interest in the house and its furnishings.

She also received the 1972 Oldsmobile and appellee's one-half interest in fifteen savings bonds of a value of $375. Additionally, appellant received appellee's one-eighth interest in Arcadia Courts.

The custody of the minor child was awarded to appellee. Appellee also received appellant's one-half interest in the lake house along with its furnishings.

The issues raised by appellant on this appeal are actually three fold. First, she alleges the trial judge abused his discretion by inequitably distributing the assets of the parties and for failing to provide for the adequate maintenance and support of appellant from the income of appellee. Second, she alleges that the trial court erred in allowing evidence of the affirmative defense of condonation to be admitted although not specially pleaded. Third, she alleges that the trial court erred in not granting the divorce on the ground of adultery.

We note at the outset the law in Alabama where the evidence in a divorce case is heard *ore tenus* by the trial court its findings are presumed correct and will not be overturned without a showing of an abuse of discretion, and this rule has particular application as regards an award of alimony. Chancellor v. Chancellor, 52 Ala.App. 10, 288 So.2d 794.

Able counsel for appellant has presented an impressive case in his effort to show that the trial judge abused his discretion in the award. Appellant cites to us those cases which hold that, depending upon circumstances, the allowance to the wife ordinarily varies from half the estate to a third. Counsel points out that appellant received property worth $75,000 of appellee's estate of $565,000, or only 14% of appellee's interest.

In this case, we cannot determine whether the award to the wife is an award of alimony in gross or a property division, but under the authority of Eubanks v. Eubanks, 52 Ala.App. 224, 291 So.2d 159, we are not required to make such a determination.

According to *Eubanks, supra,* if the award is one for alimony the amount of such award depends upon the facts of the particular case. While if it is a division of property, then such a division does not require an equal division of the estate but one graduated according to the nature of the case.

Thus, each case must depend upon the facts and no mathematical formula can determine what is an appropriate award. Self v. Self, 49 Ala.App. 665, 275 So.2d 345; *Eubanks, supra.*

Therefore, despite the persuasiveness of the arguments of able counsel for appellant, after a thorough inspection of all the facts and evidence of this case we cannot hold that the learned trial judge abused his discretion in rendering the decree.

The evidence showed that appellant received property worth almost $100,000 after the divorce. Not only is the home worth $30,000, it is also unencumbered. And the one-eighth interest in Arcadia Investors is not only worth $60,000, it is also an income producer. Appellee himself testified that he received a net of $325 a month income from this source. This income was received during a period in which the mortgage was still being paid. The last payment was to be made by October 1, 1974. The financial statement submitted into evidence revealed that the monthly income from this property is actually $755.20 a month. Thus, it appears from the financial statements and record that appellant, by the end of 1974, will be receiving over $9,000 a year income from Arcadia Investors.

While the evidence did reveal that appellee's worth was over $500,000, as already shown, he is indebted, both personally and collectively. He also has custody of the minor child and must provide for her.

In light of the award to appellant coupled with the large liability of appellee and his responsibility for the minor child, we cannot say that the trial judge abused his discretion.

Nor in this instance do we think the learned trial judge erred in allowing into evidence proof of condonation. This court is of the opinion that this contention by appellant is answered by Rule 15(b) of the Alabama Rules of Civil Procedure. Said rule reads as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised on the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . ."

No objection was made by appellant to the introduction of evidence on condonation. To this court, the evidence was therefore properly before the court for its consideration in rendering its decree.

Inasmuch as the evidence on condonation was properly before the court we cannot say that the trial judge erred in granting the divorce on the ground of incompatibility of temperament and not on the ground of adultery.

It is true that appellee did commit adultery and that the adultery was admitted by him and also by the other woman at the trial. However, in light of the evidence on condonation, we cannot say it was error not to grant it on the ground of adultery.

Condonation is the willing continuance of cohabitation, a living together in the same place from which sexual intercourse may in general be presumed. Tcherneshoff v. Tcherneshoff, 283 Ala. 700, 220 So.2d 888.

There is evidence of condonation. Appellee testified that after the filing for divorce, and discovery of his adultery, appellant requested that he move back in on occasions and also engaged in sexual intercourse. Appellant herself admitted sexual intercourse with appellee and also admitted sleeping with him. Their son testified his parents slept and dwelled together after the filing of the divorce. The parties also took two trips together, to Mobile and Florida, and slept together on each.

In light of this, we cannot hold the judge erred in granting the divorce on the ground of incompatibility—a condition both parties admitted and alleged in the complaint and cross complaint—rather than adultery.

All assignments of error and arguments of appellant having been considered, the judgment is therefore and accordingly affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.