880 So.2d 469 (2003)
Angela VINSON
v.
William M. VINSON.
2020082.
Court of Civil Appeals of Alabama.
November 14, 2003.
*471 Jay E. Stover of Callis, Stover & Stewart, Rainbow City, for appellant.
Wendy Ghee Draper of Doug Ghee & Associates, Anniston, for appellee.
YATES, Presiding Judge.
Angela Vinson ("the mother") and William M. Vinson ("the father") were married in December 1995. Three children were born of the marriagea daughter in 1997 and twin sons in 1998. On June 11, 2001, the mother sued the father for a divorce, alleging incompatibility of temperament and that she had reason to believe that the parties' four-year-old daughter had been sexually abused while in the father's care.[1] The mother sought, among other things, custody of the children, alimony, child support, health insurance, a division of the marital assets, a portion of the father's retirement benefits, and an attorney fee. She also moved for temporary custody of the children, alleging that she feared for their safety. Specifically, she alleged sexual abuse of the daughter by the father and that the father had stated that he would flee the state with the children. On June 11, 2001, the court awarded the mother temporary control and custody of the children. On July 18, 2001, the father answered the divorce complaint, alleging that the mother had committed adultery and that she bore the fault for the breakdown of the marriage. He denied that he had ever threatened to permanently prevent the mother from seeing the children. Further, the father admitted that the parties' daughter had been sexually abused, but he alleged that the mother was making false and misleading statements concerning his involvement in the abuse in order to obtain temporary custody and to deny him access to the children. He also alleged that he was the best and proper person to have custody. On July 20, 2001, the parties agreed that the father could have custody of the children for a weekend visit.
On November 1, 2001, the mother requested that the court award her temporary child support and "back pay" of child support, alleging that she had maintained custody of the children since June 2001. In February 2002, the mother moved to dismiss her November 1 motion, contending that the parties had reconciled; however, in March 2002, she moved to withdraw her motion to dismiss.
*472 After conducting an ore tenus proceeding, the court, on July 29, 2002, entered a divorce judgment. The judgment, among other things, found that the mother had committed adultery and granted the divorce on the grounds of adultery and incompatibility; the parties were awarded joint custody of the minor children, with the father having primary custody and the mother having the right to visitation. The mother was ordered to pay $625 per month as child support. On August 12, 2002, the mother moved to alter, amend, or vacate the judgment or, in the alternative, for a new trial, contending that she should have been granted primary custody of the children or more visitation time, as well as past-due child support. On September 17, 2002, following a hearing, the trial court denied the mother's motion.
The mother appeals, contending that the trial court erred in awarding the father primary custody, in restricting her visitation schedule, in failing to award her temporary child support while the case was pending, in finding that her adulterous conduct caused the divorce, and in refusing to allow testimony concerning the father's cohabitation with his alleged girlfriend in the posttrial hearing.
On appeal, the mother first argues that the trial court erred in awarding primary custody to the father. Specifically, she argues that she had been the children's primary caretaker throughout their lives and that she should continue in that role. She also alleges in her brief to this court that the trial court's decision was not based on the children's best interests, but was done to "spite and [with a] desire to punish."
At the time of the hearing, the parties' daughter was five years old and the twin sons were three years old. The mother stated that the parties had moved to Warner Robins, Georgia, in 1999. She further stated that she had been unable to secure a teaching job in Georgia; therefore, she accepted a teaching position in Clay County, Alabama, for the 2000-2001 school year. The father had a position with the military in Georgia. The mother said that she had not wanted to take the teaching job in Alabama, but, she stated, the father instructed her that she had to. The mother testified that during the 2001-2002 school year she rented an apartment in Clay County and that the children resided with her. The father came to Alabama every weekend to spend time with the mother and the children, and on occasion he took the parties' daughter back to Georgia.
The mother admitted that she had had an affair with the manager of the apartment complex where she and the children resided. She maintained that the affair lasted one month. She also admitted that the parties' daughter had been molested by a friend of a "nanny" she had hired while the parties lived in Georgia. The mother acknowledged that the father had had nothing to do with that incident.
The mother testified that she had moved from the apartment in Clay County to an apartment in Etowah County that is located three miles from her parents' residence and that her parents assisted her in caring for the children. She expressed concern that if the father was awarded custody, he would have no family nearby to help him care for the children. She also expressed concern that the parties' sons had lived with the father for only one and one-half years and that they call other men "daddy." The mother alleged that the father had paid no child support; however, she admitted that she had used his bank debit card for gasoline and "to get stuff for the kids."
*473 The mother's Clay County neighbor testified that he felt that the children were in danger because, he said, he had witnessed them, unsupervised, outside in an unfenced area on many occasions. In fact, he alleged that other neighbors "kept an eye" on the children. The neighbor also testified that he saw the maintenance man at the apartment complex go in and out of the mother's apartment. He alleged that the mother's relationship with the maintenance man was "open" and "blatant."
The father testified that he lived in Georgia and that he was employed by Boeing Aerospace, teaching military personnel how to fly surveillance aircraft. He stated that in March 2001 he retired from the military and took the job with Boeing. He said that, at that time, he had asked the mother to "come home." He testified that, until June 2001, he made the mother's monthly van payments and that she used his debit card "as freely as she wanted to." He stated that he called every day that the parties were living apart to check on the children and that he was concerned about the movies the mother allowed them to watch. One such movie concerned divorced parents where the father was having an affair and was no longer interested in the children's lives. He testified that the parties' then four-year-old daughter had watched this movie over and over and had begun to believe that her father no longer wanted her. He alleged that during the parties' 13-month separation, he repeatedly tried to reconcile.
"`A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....'" Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (internal citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe the witnesses is especially important in child-custody cases. "In child custody cases especially, the perception of an attentive trial judge is of great importance." Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In regard to custody determinations, the Alabama Supreme Court has also stated: "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).
In an initial award of custody, the trial court must decide the custody issue based on the best-interest-of-the-child standard. See Ex parte Couch, 521 So.2d 987 (Ala.1988). The parties stand on equal footing; neither party enjoys a favorable presumption. See Smith v. Smith, 727 So.2d 113 (Ala.Civ.App.1998).
In considering the best interests and welfare of the child, the court must consider the individual facts of each case:
"The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments *474 offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose."
Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981).
The trial court had the advantage of observing the witnesses, and it made a custody decision based upon a credibility determination. The court's custody decision was supported by the evidence. The judgment as to this issue is affirmed.
Next, the mother contends that the court erred in restricting her visitation schedule. Specifically, she argues that the order does not provide for birthday visits or visitation on Mother's Day.
The trial court awarded the mother the following visitation with the children:
"a) Every first and third weekend of each month from Friday at 5:00 P.M. until [Sunday at] 6:00 P.M.
"b) One-half (½) of the minor children's break from school for the summer.
"c) One (1) week during the Christmas holidays....
"d) The [mother] shall have the children for one-half (½) of spring break....
"e) At all other reasonable and convenient times as the [p]arties may agree upon."
The order also stated that the parties should "share decision-making authority as to major decisions affecting the welfare and upbringing of the said children." The court also ordered each party to "insure that the children are allowed unhampered contact and free access with the other [p]arty."
Matters of visitation rest soundly within the broad discretion of the trial court, and a trial court's determination regarding visitation must be affirmed absent a finding that the judgment is unsupported by any credible evidence and that the judgment, therefore, is plainly and palpably wrong. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). Here, we believe that the trial court attempted to ensure that both parties could maintain a close relationship with their children, and, therefore, we find no abuse of discretion. The judgment as to this issue is affirmed.
Next, the mother contends that the trial court erred in failing to award her temporary child support while the case was pending. Although the mother had filed a motion requesting temporary child support, the court never ruled on that motion. On June 11, 2001, the same day the mother sued for a divorce, the mother filed a "motion for temporary custody pending hearing" wherein she asked for "such other, further and different relief [as] she may be entitled." Then, on November 1, 2001, the mother filed a "motion to set temporary child support and motion for final hearing." The trial court never entered a pendente lite child-support order in this case. The mother argues in her *475 brief to this court that it was "inequitable" to allow the father to escape providing support for his children. The father testified that after the divorce action was filed, "[the mother] wouldn't accept anything from me.... I mean, I wanted the kidsI still provided for them when I had them. I sent them home with things. I offered to go buy their groceries." During the 13 months that the case was pending, the trial court did not enter an order providing for the minor children's support. We stated in Brown v. Brown, 719 So.2d 228, 232 (Ala.Civ.App.1998):
"This court will not allow the trial court's oversight in this regard to accrue to the benefit of the noncustodial parent. To do so would reward the noncustodial parent for the failure or refusal to support his or her child; it might also serve to encourage a noncustodial parent to withhold needed support during the pendency of the divorce action. Alabama law does not support such a result."
Accordingly, we reverse the judgment as to this issue and remand the case for the trial court to calculate a retroactive child-support award from June 2001 through July 2002.
Next, the mother argues that the trial court erred in divorcing the parties on the ground of adultery. Specifically, she argues that the trial court cannot make such a finding after the parties have reconciled. She states that, during the pending divorce action, the parties lived together for several weeks and the case was placed on the administrative docket. She contends that these facts indicate that the parties had reconciled.
The mother admitted that she committed adultery. She testified that the affair lasted one month, ending in May 2001. In June 2001, she sued for a divorce. She testified that the parties attempted to reconcile and resumed marital relations from Thanksgiving 2001 through March 2002. The father also testified that the parties repeatedly tried to reconcile. He testified that he told the wife that, "if she would come home, . . . she would not take all the blame."
"`Condonation means the willing continuance of cohabitation, a living together in the same place from which fact sexual intercourse may in general be presumed.'" Rush v. Rush, 551 So.2d 1075, 1076 (Ala.Civ.App.1989), quoting Latham v. Latham, 54 Ala.App. 305, 307, 307 So.2d 703, 707 (Ala.Civ.App.1975). "Condonation" in the context of a divorce case means forgiveness by the offended spouse. Id. Where there has been a condonation of adultery, a divorce may not be granted on the ground of adultery. Id.
Here, the mother committed adultery; however, in light of the evidence regarding condonation, we conclude that the trial court erred in finding adultery as a ground for divorce. The judgment as to this issue is reversed and the case is remanded for the trial court to grant a divorce solely on the ground of incompatibility.
Finally, the mother argues that the trial court erred in refusing to allow certain testimony during the posttrial hearing. She claims that she sought to introduce evidence revealing that the father had moved his girlfriend into his home with him and the children. The mother cites no authority in support of this argument. Therefore, she has waived this issue for appeal. See Rule 28, Ala. R.App. P., and Messer v. Messer, 621 So.2d 1343 (Ala.Civ.App.1993).
The father's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
*476 THOMPSON, J., concurs in the result, without writing.
CRAWLEY, J., concurs in part and dissents in part, with writing.
PITTMAN, J., concurs in part and dissents in part, with writing.
MURDOCK, J., concurs in part, concurs in the result in part, and dissents in part, with writing.
CRAWLEY, Judge, concurring in part and dissenting in part.
I dissent as to the reversal on the issue of retroactive child support. During the separation, the mother paid her bills from her salary, and she used the father's debit card to pay for gas and medical expenses for the children and to purchase things for the children. The mother testified that since she filed for divorce the father had given her some money and had purchased diapers, most of the children's clothing, toys, and Christmas presents for the children. He also provided health insurance for the children. The father paid all the payments on the van she drove. The father and mother both paid the children's day-care costs. The mother issued a check on insufficient funds, and the father paid the check and penalties for her. In April 2002, the mother and the father agreed to file separate income-tax returns with the mother claiming the children. She received a $4,000 tax refund, and he had to pay state and federal taxes. The mother testified that she agreed to give the father $1,400 of the refund and to apply the rest of the refund to their van lease payment. At first, the mother testified that she forgot to send the father the $1,400, then she admitted that she did not forget. Her intentions were to use $2,600 of the refund to pay a mileage penalty on the van lease. Instead, she stated that she used $3,000 of the tax refund to purchase a vehicle for her personal use. After the mother purchased herself the new vehicle, she returned the van to the father with over 71,000 miles on it, double what the lease agreement allowed. She further testified that she should not be responsible for the over-the-limit mileage penalty for the leased van.
"[A] trial court may, in its discretion, award child support retroactive to the filing of the complaint for divorce where the trial court has failed to enter a pendente lite child support order for the period in which the parent had a duty to support the child but failed to provide that support."
Brown v. Brown, 719 So.2d 228, 232 (Ala. Civ.App.1998) (emphasis added).
In view of the father's support of the children, the trial court did not abuse its discretion in not awarding retroactive support.
I concur in the main opinion as to the other issues.
PITTMAN, Judge, concurring in part and dissenting in part.
I concur in the main opinion in all respects except one: although the evidence does support a finding of incompatibility, I do not believe that the trial court's finding of adultery in its divorce judgment is incorrect. The trial court could have concluded from the father's testimony that the mother did not actually resume "living together in the same place" with the father in Georgia after her affair so as to mandate a conclusion that the father condoned the mother's adultery. Under our law, *477 something more than a "mere temporary cohabitive relationship," such as occasionally spending weekends together, must occur to warrant a conclusion that a party has condoned his or her spouse's adultery; "[t]here must be an intention to forgive and to resume the marital relationship." Rush v. Rush, 551 So.2d 1075, 1077 (Ala. Civ.App.1989). Because the main opinion recognizes the propriety of the trial court's divorce judgment based on the evidence presented but unnecessarily directs the trial court to base its divorce judgment solely on the ground of incompatibility, despite substantial evidence supporting the ground of adultery, I dissent as to that issue.
MURDOCK, Judge, concurring in part, concurring in the result in part, and dissenting in part.
I concur in those portions of the main opinion regarding custody and the trial court's refusal to hear testimony during the postjudgment hearing; I concur in the result in that part of the main opinion that addresses visitation. As to that part of the main opinion addressing the trial court's failure to award retroactive child support, I dissent and join Judge Crawley's special writing as to that issue. Based on the rationale in Judge Pittman's special writing, I also dissent from the main opinion's reversal of the trial court's grant of the divorce on the ground of adultery.
NOTES
[1] This case was filed in the Etowah Circuit Court and was later transferred to the Clay Circuit Court upon the father's request.