942 So.2d 380 (2005)
Sandy Renee Guy PATE
v.
Gregory Gilbert GUY.
2031005.
Court of Civil Appeals of Alabama.
December 30, 2005.
Order Overruling Rehearing March 17, 2006.
Certiorari Denied May 12, 2006.
*382 Elizabeth H. Huntley, Clanton, for appellant.
Amy Hayes Naylor, Clanton, for appellee.
Alabama Supreme Court 1050881.
PITTMAN, Judge.
Sandy Renee Guy Pate ("the mother") appeals from a judgment divorcing her from Gregory Gilbert Guy ("the father"), dividing the marital property, awarding custody of the parties' children, and setting a child-support obligation.
The parties were married on April 28, 1984. Two daughters were born of the marriage, one in 1990 and one in 1996. On June 12, 2001, the father filed a complaint seeking, among other things, a judgment divorcing him from the mother and equitably dividing the marital property. The father also requested liberal visitation with the parties' children. The mother filed an answer and counterclaim requesting, among other things, a judgment awarding her custody of the children, child support, and alimony. The mother also filed a request for pendente lite support; a hearing on that issue was conducted before a special master on July 6, 2001. During the hearing on the pendente lite support, each party testified that neither one was employed at that time. Although each party admitted to owning a share of a family-owned business within their separate families, each party stated that both businesses were operating at a loss at the time of that hearing. Additionally, both parties admitted that their financial record keeping had not been particularly accurate during the marriage; the mother alleged that during the marriage the father regularly took cash out of his family business, which the couple had not reported on their federal-income-tax returns.
The evidence also indicated that previously the father had been injured while employed by a construction company and had received a $500,000 settlement for his injuries. The parties had used much of that settlement money to pay for construction of the jointly owned marital residence, which they owned debt-free at the time that the divorce complaint was filed. Based on the parties' insistence that neither party was gainfully employed, the special master concluded that he could not calculate the appropriate child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin.; therefore, the child-support determination was reserved for the trial judge to make at the final hearing on the issues. Following the hearing on pendente lite support, the parties were instructed to continue to pay their share of the normal marital expenses; in addition, the father was awarded standard visitation with the children every other weekend and every Wednesday after school.
The trial court conducted an ore tenus *383 proceeding in June 2002,[1] and on July 3, 2002, it entered an order that granted the parties a divorce but reserved "for future consideration all other issues," including the award of custody of the parties' children, the awards of child support and alimony, and "the division of marital property and debt." In addition, the July 2002 order renewed all existing pendente lite orders until a final judgment could be entered.
The trial court received documentary evidence and testimony from the parties and other witnesses on January 13-14, 2003, April 15, 2003, and May 7, 2004. Among the witnesses testifying on behalf of the father were the children's paternal grandmother, the father's sister, and two family friends; among those testifying on behalf of the mother were the eldest daughter of the parties, four employees or former co-workers of the father, two family friends, and the businesses' accountant.
Because the actual trial consisted of 4 days over a 16-month period, the testimony cannot easily be reduced into a short summary. Stated simply, each party bitterly contested each and every assertion made by the other party. The father's family and friends testified that the mother was loud, argumentative, vulgar, and irrational. The mother's witnesses insisted that the father was self-centered, lazy, irresponsible, and violent, with an uncontrollable temper. The father testified that the mother had consistently failed to provide the children for the pendente lite alternating-weekend visitation. On the other hand, the mother complained that the father had not offered to pay for any of the household expenses such as groceries or utilities during the pendency of the divorce action.
The only undisputed testimony was provided on the final day of the proceeding by the parties' accountant, Linda Pittman. Pittman stated that she had prepared the business-income-tax returns for both family businesses beginning in 2001. She testified that the mother's family business had paid the mother a salary of $10,000 in 2001 but had not paid her any salary in 2002 or 2003. Pittman noted that her records revealed that that business had earned less than $10,000 in 2002 and only $11,000 in 2003. On the other hand, Pittman noted that the father's family business had earned in excess of one million dollars during each of those same three years.
Other than the testimony regarding the current assets of the family businesses, very little testimony regarding the parties' marital assets and debts, child support, visitation, and personal property was undisputed. The father did admit that besides paying the annual homeowner's insurance and property-tax payment of around $5,000 per year, he had paid nothing toward the household expenses after he filed his divorce complaint in June 2001. The father insisted that although he was not required to support the children pendente lite, his income was negligible in that he claimed his weekly salary was around $265 per week from the family business. During cross-examination, the father admitted that he regularly gave between $600 and $700 per month to his girlfriend with whom he was living to pay toward the couple's monthly bills. Additionally, the father stipulated that he had written checks totaling $52,000 on his family-owned-business account to pay for gambling losses in 2002.
The mother stated that she had gone back to teaching in elementary school after the parties had separated to provide health insurance and a steady income for herself *384 and the children. She estimated that the household bills, including utilities and groceries, fluctuated between $1,500 and $2,000 per month. She testified that the older daughter would not visit the father and paternal grandparents because she was afraid of the men. The mother noted that the paternal grandfather had been accused of molesting two of the young women in the family; she stated that after the paternal grandfather had offered her money in exchange for sexual favors that the father had banned the paternal grandfather from visiting the marital residence. The parties' older daughter testified that she stopped visiting with her father because during visitations he would leave her with the paternal grandparents all weekend; she also complained that her father yelled at her "a lot" and constantly made derogatory comments about her mother.
On July 15, 2004, the trial court entered a final judgment regarding the issues that had been reserved from the July 2002 order. The trial court awarded primary custody of the parties' children to the mother. The trial court awarded the father and the paternal grandfather[2] alternating weekend and specific holiday visitation, subject to the supervision of the paternal grandmother or the paternal aunt. The father was ordered to pay $1,223 in monthly child support and to pay one-half of the noncovered medical costs incurred by the children. The mother was ordered to maintain health-insurance coverage for the children. The trial court awarded each party the vehicle in his or her possession.
The judgment awarded the mother the marital residence and approximately two and one-half acres on which that residence was located, all of the parties' marital interest in her family's retail-furniture business, and all of her teacher's pension. The judgment awarded the father all of the parties' marital interest in his family's building-supply business and the title to approximately 40 acres which was the remaining acreage abutting the marital residence and jointly owned by the parties. He was also awarded the full amount of his carpenter's union retirement account.
The mother's primary allegation of error is that the trial court erred in failing to award pendente lite, retroactive, or adequate child support. The mother also asserts that the trial court's marital-property division was inequitable so as to constitute an abuse of discretion. In addition, she contends that the trial court erred in awarding visitation to the paternal grandparents, who, she claims, did not properly intervene in the divorce action, and in failing to award her a reasonable attorney fee.
Alabama's well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed to be correct. See Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995); and Kratz v. Kratz, 791 So.2d 971, 973 (Ala.Civ. App.2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Scholl, supra; Kratz, supra. The ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and the witnesses and to assess their demeanor and credibility. Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
The mother first contends that the trial court erred in failing to award child support either pendente lite or retroactive to the filing of the divorce complaint. In *385 Brown v. Brown, 719 So.2d 228 (Ala.Civ. App.1998), this court overruled earlier caselaw and established the following rule. At its discretion, a trial court may award child support retroactive to the filing of the complaint for divorce when the trial court has failed to enter a pendente lite child support order during the pendency of the divorce proceedings during which the noncustodial parent had a duty to support the children but failed to provide that support. See Brown, 719 So.2d at 232. More recently, this court reversed a trial court's failure to award retroactive child support based upon Brown and the well-established principle that parental support is a fundamental right of all minor children. See Vinson v. Vinson, 880 So.2d 469 (Ala. Civ.App.2003).
In this case, the mother had requested pendente lite relief three days after the father filed his divorce complaint, but the trial court did not enter an order granting that relief. The record contains several motions filed by the mother requesting similar relief throughout the three-year pendency of this divorce action. On the other hand, the record also contains at least three requests for hearing continuances filed by the mother; although one of those requests was made because the father had failed to attend his pretrial deposition, the other two continuances were requested because the mother had changed attorneys immediately before previously scheduled hearing dates.
The father freely admitted that although he had continued to pay the insurance property taxes on the marital residence and occasionally had offered spending money to each of the children, he had not regularly contributed to the monthly support of the household after June 2001. In fact, during his testimony the father specifically noted that the trial court had not ordered him to make any monthly child-support payments, and therefore that he had not done so.
After thoroughly reviewing the record in this case, we conclude that the trial court did not abuse its discretion in failing to award pendente lite child support and that the mother contributed to the lengthy delay that occurred before the trial court could conclude the divorce proceedings and enter a judgment. However, based on the totality of the evidence and the precedents established in Brown and Vinson, we cannot agree that the trial court's failure to award retroactive child support was also proper.
As reiterated in both Brown and Vinson, "`[p]arental support is a fundamental right of all minor children.'" State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995) (quoting Ex parte University of South Alabama, 541 So.2d 535, 537 (Ala.1989)). That right of parental support exists regardless of the lack of court instructions. In fact the Alabama Legislature, recognizing the necessity of parental support for minor children, established a cause of action for retroactive child support against a nonsupporting spouse that became law in March 1994. See Ala.Code 1975, § 30-3-110 through § 30-3-115.
In this case, the pendente lite order required the parties to continue to pay their "pro rata" share of the marital expenses. Although the mother had not been employed full-time for over a year when the parties separated, she began teaching again within a year of the separation in order to provide sufficient income and health coverage for herself and the children. She contends, and the father conceded at trial, that the father did not pay any portion of the household expenses, other than homeowners' insurance, after he filed his complaint seeking a divorce in June 2001. The children had a legally *386 enforceable right to be supported by both parents during the pendency of their parents' divorce action.
Although the father insists that because he was not ordered to pay any pendente lite child support he should be completely excused from all child-support obligations before the July 2004 judgment was entered, the precedents cited above militate against that assertion. We conclude that the judgment must be reversed in part and remanded for the entry of a revised judgment that includes an appropriate amount of retroactive child support for the benefit of the parties' children.
The mother asserts that the trial court failed to comply with the requirements of Rule 32, Ala. R. Jud. Admin., in its calculation of present child support. We have reviewed the testimony and documents submitted by the parties regarding their respective incomes and conclude that the trial court properly imputed income to the father in order to set a monthly child-support amount. The fact that the parties' combined salaries including the income imputed to the father produce a monthly income in excess of $10,000, a figure that represents the top level of the child-support-guidelines schedule, places the child-support computation squarely within the trial court's discretion. See Rule 32(C), Ala. R. Jud. Admin. ("The court may use its discretion in determining child support in circumstances where combined adjusted gross income is below the lowermost levels or exceeds the uppermost levels of the schedule.").
This court has often noted that "`child support is a matter that rests soundly within the trial court's discretion and that such judgments will not be reversed absent a showing that the trial court abused its discretion.'" Roberts v. Roberts, 802 So.2d 230, 237 (Ala.Civ.App. 2001) (quoting Boykin v. Boykin, 628 So.2d 949, 952 (Ala.Civ.App.1993)); see also O'Neal v. O'Neal, 678 So.2d 161 (Ala. Civ.App.1996). In addition, in cases such as this one, where the parents' combined monthly income exceeds the support schedule, the trial court is accorded wide discretion to determine the appropriate amount of child support. See, e.g., Boykin v. Boykin, 628 So.2d at 952 (Ala.Civ.App. 1993); see also Roberts and O'Neal, supra. While we might have made a different child-support award in this case, this court "may not substitute its judgment for that of the trial court." Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000). Based upon a careful review of the evidence presented in this case, we cannot say that the trial court abused its discretion when it ordered the father to pay $1223 in monthly child support.
The mother also contends that the trial court erred in its division of the parties' marital property and assets; her primary allegation is that the father dissipated over $500,000 of marital assets during the three-year pendency of this divorce action. The evidence presented to the trial court indicated that the parties had lived a very extravagant lifestyle during their marriage, regularly taking expensive vacations and gambling trips, investing in real estate and their family's businesses, and often paying their own living expenses with cash that regularly "appeared," although neither party was employed full-time when the parties separated.
Additionally, a trial court's division of property and its award of alimony are interrelated issues, and the entire judgment must be considered in determining whether the trial court has abused its discretion as to either issue. See O'Neal v. O'Neal, 678 So.2d at 164. A property division does not have to be exactly equal for it to be equitable (and therefore proper) *387 based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996). When dividing marital property and determining the need for alimony, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage. Golden, 681 So.2d at 608; see also Ex parte Elliott, 782 So.2d 308 (Ala. 2000).
During the marriage, the father had purchased a building-supply enterprise with his parents; that business was producing at least one million dollars annually at the time of trial. In addition, the father and mother had purchased land and a building on which the mother's mother and sister had located a retail furniture store; the parties had sold that property to the mother's family a few months before the parties had separated; however, that business was not generating any income for the mother at the time of trial. The mother insisted that during the marriage the parties had removed whatever cash they needed from the building-supply cash register; the father denied that allegation. The mother also noted that six months before the parties had separated, the father had removed approximately $20,000 from the children's college-savings accounts to buy stock for the building-supply company; she contended that he never replaced those funds. In addition, the mother testified that the parties had purchased a certificate of deposit in which to accumulate savings for future expenses; she offered into evidence the bank statements for that account, which indicated that during the year immediately preceding the parties' separation, the value of that account had dropped from $89,696 to approximately $400. The mother testified that she had not known that the father had withdrawn any money from that account until she tried to withdraw $5,000 in the fall of 2001 to pay bills and discovered that those funds were gone.
In rebuttal, the father contended that the parties only withdrew cash in the amount of his weekly salary from the building-supply company cash register. He also claimed that the mother had taken $38,000 in cash from his office safe within a week of the parties' separation, although no report of that theft was ever filed with the police. The father stated that he did not report the theft because that cash was his accumulated gambling profits.
Although the mother insists that the property division is inequitable, we have previously noted that this court is authorized to disturb the trial court's decision only if it is unsupported by the evidence and, therefore, "is unjust and palpably wrong." See Scholl, supra; Kratz, supra; see also Ex parte Durbin, 818 So.2d 404, 409 (Ala.2001). "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). Furthermore, an appellate court may not substitute its judgment for that of the trial court; Alabama law does not allow this court to reweigh the evidence. See Ex parte Foley, 864 So.2d 1094, 1098 (Ala.2003). In light of these principles, we cannot conclude that the trial court abused its discretion in this case.
*388 The mother also contends that the trial court erred in granting visitation to the paternal grandparents and in failing to award her a reasonable attorney fee. The record reveals that in October 2003 the paternal grandparents filed a petition to intervene pursuant to § 30-3-4.1 et seq., Ala.Code 1975; although the trial court never formally granted that petition, the father and the paternal grandfather were awarded alternating-weekend visitation, subject to strict supervision by the paternal grandmother or the paternal aunt. The mother complains that the trial court's failure to grant that petition to intervene bars the award of grandparent visitation; however, we note that the paternal grandparents did not receive any visitation separate from that awarded to the father. The visitation provision of the judgment merely permits the paternal grandfather to visit with the grandchildren during the alternating weekend visits granted to the father; moreover, the paternal grandfather can only visit the grandchildren under the supervision of the paternal grandmother or paternal aunt. Ultimately, however, we do not have before us the question whether this award of visitation should be sustained on the merits. Although the mother states in a conclusory manner that the award was improper, she cites no legal authority in her brief to support that assertion, and we will not make legal arguments on behalf of the mother. See Rule 28, Ala. R.App. P.; and Ex parte Showers, 812 So.2d 277, 281 (Ala.2001). In view of our reading of the visitation provision contained in the judgment, we conclude that the visitation order in this case is proper.
Alabama law is well settled that an award of attorney fees in a divorce action is a matter within the sound discretion of the trial court. When making a determination whether to award an attorney fee, the trial court should consider the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation. See McClelland v. McClelland, 841 So.2d 1264, 1272 (Ala.Civ. App.2002). The father had been seriously injured and was working part-time in his family's building-supply business; the mother was teaching full-time and working part-time at her family's retail furniture business. The divorce proceedings comprised three years of contentious depositions, motions, and hearings. Neither party followed the pendente lite orders and both contributed to the protracted nature of the proceedings. Based on the McClelland factors, we conclude that the trial court could properly have determined that each party should pay his or her own attorney fees and that his failure to award the mother an attorney fee was not an abuse of discretion warranting reversal.
Accordingly, we reverse the trial court's judgment insofar as it failed to award retroactive child support, but we affirm that judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result without writing.

On Application for Rehearing
PITTMAN, Judge.
APPLICATION FOR REHEARING OVERRULED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, with writing.
*389 MURDOCK, Judge, concurring in overruling the application for rehearing.
I concur in overruling the wife's application for rehearing in this case. I write separately to note that I see nothing in the facts of this case that would justify, constitutionally, an award of grandparental visitation. As I recently stated in Dodd v. Burleson, 932 So.2d 912 (Ala.Civ.App. 2005):
"My views as to [the due-process, constitutional issue raised in cases involving grandparental visitation] continue to be as expressed in R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001), L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only), and subsequent cases. See also, e.g., McQuinn v. McQuinn, 866 So.2d 570, 578 (Ala.Civ. App.2003) (Murdock, J., dissenting)."
932 So.2d at 922 (Murdock, J., concurring in the result only). See also Richburg v. Richburg, 895 So.2d 311 (Ala.Civ.App. 2004); and Beck v. Beck, 865 So.2d 446 (Ala.Civ.App.2003) (Murdock, J., concurring in the result). The fact that the grandparents in this case have been awarded the right to visit with the children only during time periods when the father is also authorized to visit does not change the fact that the grandparents have been given their own, separate, legal right by a court order to visit with the children during those periods. Nor is the constitution-based objection to the award of grandparental visitation in cases such as this assuaged by a requirement that such visitation be supervised by a third party.
On appeal, however, the wife makes no substantive argument, at least none supported by citation to any authority, challenging the constitutionality of the visitation awarded to the grandparents. Her only contention is that the award of grandparental visitation was inappropriate on the ground that the grandparents failed to file, and the trial court failed to grant, a formal motion to intervene. This argument, however, was not raised in the trial court and should not be considered as a basis for reversing the trial court's judgment at this juncture. See Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992). It is on this basis, alone, that I concurred in the result reached by the main opinion on original submission insofar as the issue of grandparental visitation is concerned, and that I concur in overruling the application for rehearing insofar as that issue is concerned.
NOTES
[1] No transcript of that proceeding, if any exists, was included in the record on appeal.
[2] In October 2003, the grandparents had filed a petition in the trial court seeking visitation pursuant to § 30-3-4.1, Ala.Code 1975.