PITTMAN, Judge.
This appeal concerns custody and visitation matters arising out of a divorce action. In November 2008, Kenneth L. Lee, Jr. (“the father”), filed an action in the Eto-wah Circuit Court seeking a judgment dissolving his marriage to Lamiaa Lee (“the mother”), a Moroccan native whom he had met, courted, and married while he was serving in the United States Navy in the Middle Eastern country of Bahrain and who had later become a naturalized citizen of the United States. The father alleged in his complaint that one child, a son who was then three years old, had been born of their marriage; he sought an exclusive award of the child’s custody because, he said, the mother planned to take the child outside the United States and to prevent the father from seeing the child again. The trial court awarded the father custody of the child pendente lite, with the mother having supervised visitation with the child, and set the remaining issues for a subsequent trial. The mother filed a motion to “transfer venue” of the action to a court in San Diego, California, based upon the parties’ presence in that city in response to command orders requiring the father to report for duty there; that motion was denied. In February 2009, after the trial court had confirmed the custody and visitation provisions of the previous pendente lite order, the mother filed an answer and a counterclaim seeking a divorce and averring that she and not the father should receive custody of the child.
After an ore tenus proceeding, at which the parties testified and submitted exhibits, the trial court entered a judgment on May 20, 2009, divorcing the parties and awarding the father sole custody of the child. The trial court made the following provisions for the mother’s visitation with the child:
“... [The mother] shall have supervised visitation with the [child] at all times agreed upon between the parties. The supervised visitation shall take place in a public area and the [mother] shall at no time leave alone with the parties’ minor son ... else it shall be considered as parental kidnapping. [The father] shall remain with the [child] at all times during said supervised visitations, but a short distance away.
“... If at any time the [father] is to be deployed, then [he] will designate a Custodian that is to keep the [child] and he/she shall be the primary Custodian of the [child]. [The mother] shall have supervised visitation in a public area at times mutually agreed upon between the Custodian and [the mother] and the [mother] shall at no time leave alone with the [child] else it shall be considered as parental kidnapping. The Custodian shall remain with the [child] at all times during said supervised visitations, but a short distance away. During and at all times that the [father] is deployed the Custodian will have total control of the [child] and is allowed to seek medical attention, obtain medical records, school records and any other documentation needed from any source regarding the [child].”
The mother, through new counsel, appealed from that judgment to this court.
The mother’s first contention is that the trial court erred in awarding custody of the child to the father. We note that an appellate court, in reviewing a trial court’s child-custody determination that was based upon evidence presented ore tenus, is to presume that the trial court’s *214 decision is correct. Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). An appellate court will not reverse the trial court’s judgment as to custody in such a case unless the evidence fails to support the trial court’s custody determination so that the appellate court must conclude that that determination is “‘plainly and palpably wrong.’ ” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)). The correctness of an initial custody determination is dependent upon a trial court’s consideration of a number of factors, such as the sex and age of the child at issue; the child’s emotional, social, moral, material, and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including their ages, characters, relative stability, and mental and physical health; the ability of each parent to provide for the emotional, social, moral, material, and educational needs of the child; the interpersonal relationship between the child and each parent; and any other material concerns the evidence may disclose. See Vinson v. Vinson, 880 So.2d 469, 473-74 (Ala.Civ.App.2003); see also Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981) (rejecting the application of a presumption that the primary care of young children, in particular, should be placed with their mothers).
In this case, the mother argues that, based upon the child’s relatively young age, the child “needs the care and nurture of the mother,” notwithstanding the rejection of such a per se presumption in Ex parte Devine. We agree with the father that the age of the child is only one factor to be considered. Further, although the mother asserts that the father should not have custody because, she says, he does not know how to physically care for the child, the trial court heard evidence indicating that the father had cared for the child between 40 and 50 percent of the time and had toilet trained the child. Although the mother denied at that hearing the father’s estimate of the time he had cared for the child, she admitted that the father had provided for the child financially. The father testified at subsequent custody hearings that the United States Navy had assigned him to a training unit in San Diego and would likely keep him in that assignment because of the child’s custodial status. The father has secured a two-bedroom residence on a naval installation in the San Diego area that is adequate and that is conveniently close to the child’s day-care, medical, and dental providers. In contrast, the mother testified regarding her current work at “Club Med” resorts in such places as Florida and the Bahamas, and it can be inferred from her testimony that she is subject to frequent relocation; she indicated that she was “okay with” the child’s residing with the father in San Diego. The trial court could well have concluded from the evidence that the stability of the child’s life would be more fully enhanced if he stayed in the sole custody of the father at his assigned duty station in the San Diego area, or with the father’s extended family in the Gadsden area (who had agreed to care for the child if the father were to be deployed out of the United States), than if the child accompanied his mother to various resort areas.
The mother next assails two aspects of the trial court’s visitation award. The first concerns the requirement that the mother’s visitation be supervised. Although the mother cites the main opinion in Jackson v. Jackson, 999 So.2d 488 (Ala.Civ.App.2007), for the proposition that a trial court may not “select[] an overly broad restriction that does more than address a particular concern and thereby unduly infringe[ ] upon the parent-child relationship,” 999 So.2d at 494-95, we cannot *215 conclude that requiring supervised visitation was not within the trial court’s discretion in this particular case. The father testified that the mother had often threatened to abduct the child and transport him to Bahrain or to her home country of Morocco, a country that, the father correctly notes was not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, as of the date that this appeal was submitted.[1] In particular, the father testified that, just over one week before the final hearing, the mother had stated, “ ‘If the Judge does not give me what I want, I’m taking him [i.e., the child] to Morocco.’” There was also evidence in the record tending to show that the mother’s father is a law-enforcement official in Morocco and that one of her sisters works for an airline serving the Middle East. The record further indicates that the mother had obtained both Moroccan and American passports for herself and that she would be able to obtain a replacement passport for the child by producing a copy, currently in her possession, of the child’s birth certificate. Although our cases are silent on the point, a number of cases in American jurisdictions recognize the propriety of requiring supervised visitation when the noncustodial parent is shown to pose a risk of abduction. E.g., Shady v. Shady, 858 N.E.2d 128, 143 (Ind.Ct.App.2006); Moon v. Moon, 277 Ga. 375, 377, 589 S.E.2d 76, 79-80 (2003); and Monette v. Hoff, 958 P.2d 434, 436 (Alaska 1998). We perceive no error here.
Although the trial court acted within its discretion in requiring the mother’s visitation with the child to be supervised, we reach a different conclusion as to a second aspect of the visitation award challenged by the mother: that her visitation is subject to the whim of the father. The trial court did not specify particular visitation times for the mother, stating instead that visitation times shall be “agreed upon between the parties” or, if the father is deployed, mutually agreed upon between (a) the custodian designated by the father and (b) the mother. The mother correctly cites K.L.R. v. L.C.R., 854 So.2d 124, 132-33 (Ala.Civ.App.2003), for the proposition that visitation provisions that merely allow the parties to arrange visitation are improper because they, in effect, allow the custodial parent to determine the noncustodial parent’s visitation schedule. Accord K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala.Civ.App.2001); Bryant v. Bryant, 739 So.2d 53, 56 (Ala.Civ.App.1999). Although we sympathize with the trial court’s attempt to accommodate the mother’s transient employment arrangements by encouraging the parties to amicably resolve visitation scheduling, that court cannot properly leave the fundamental issue of visitation subject to a veto by the father or his designee.
For the reasons stated herein, we reverse that aspect of the trial court’s judgment predicating the mother’s visitation with the child upon the agreement of the parties, and we remand the cause so that the trial court may enter a judgment setting forth a specific visitation schedule for the mother, subject to the conditions that the trial court, in its discretion, may set. *216 In all other respects, the trial court’s judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. According to an Internet Web site maintained by the Hague Conference on Private International Law, Morocco apparently did accede to the Hague Convention as of March 9, 2010, and the provisions of the Convention will enter into force there on June 1, 2010. See "HCCH Status Table,” located at http:// www.hcch.net/index_en.php?act= conventions.status&cid=24 (as visited on April 16, 2010; a copy of the Web page containing that table is available in the case file of the clerk of the Alabama Court of Civil Appeals).