BRYAN, Judge.
Jeremy Gilbert Kiel (“the husband”) appeals the judgment divorcing him from Laura Frances Kiel (“the wife”) insofar as it awarded the wife alimony in gross, periodic alimony, an attorney fee, and a private-investigator fee. We affirm.
On January 16, 2008, the wife sued the husband for a divorce on the grounds of incompatibility and adultery committed by the husband. The husband answered the wife’s complaint and counterclaimed for a divorce on the ground of incompatibility. The wife answered the husband’s counterclaim and, subsequently, amended her complaint to state a claim for damages or, in the alternative, alimony in gross, to compensate her for the husband’s alleged misuse of funds the wife had inherited from her parents. Thereafter, the action proceeded to trial. The trial court held a bench trial on January 3, 2009, at which it received evidence ore tenus. On June 26, 2009, the trial court entered a judgment, *1060 which contained the following findings of fact:
“The parties were married in Russell-ville, Alabama on January 6, 1996. According to the Wife, the parties met in high school and dated throughout their college studies. Both parties possess college undergraduate degrees. The Wife earned a Masters Degree prior to the marriage. During the entirety of the marriage, the Husband was the primary wage-earner. Following the marriage, the Wife left a high school teaching position prior to securing tenure in order to accompany the Husband to Mississippi where he accepted a position consistent with his engineering education. The Husband later found employment in Madison County and the parties relocated to Alabama. The Husband remained employed with that employer or its predecessor as a maintenance supervisor until his lay off in January of 2009. The Husband is presently drawing severance pay benefits in a sum similar to his earlier base pay although the severance package benefits terminate in September 2009. During trial, the Husband claimed to be making an active job search. He does not suffer from any health conditions that limit his employment and has considerable experience in his field.
“Following the move to Madison County, the Wife sought and secured employment in an administrative position with Virginia College. She left that employment in the latter part of 2000 in anticipation of the birth of the parties’ first child, ... who was born March 23, 2001. Later, on June 2, 2003 and on October 19, 2005 the parties’ [two] remaining children, ... were born. Prior to [the first child’s] birth, the parties agreed the Wife would not work outside the home and that she would serve as the homemaker and stay at home mom to the parties’ three children.
“In 2005, the Wife’s mother, her remaining surviving parent, was killed in an automobile accident. The Wife was the sole survivor of her parents and inherited approximately $300,000, all of which she placed in the parties’ joint savings and checking accounts with Red-stone Federal Credit Union [ CRFCU’) ].[1] Although she had access to the family’s banking and credit card records, she testified the Husband was the bill payer and she trusted him to manage the money.
“The Wife testified she considered her marriage to be perfect until the latter part of 2006 or early part of 2007. She stated she loved her husband, her children and their residence. Her concerns at that time were the increasing amount of time the Husband was required to work (frequently 18 hours per day, from 1:00 a.m. until 6:00 p.m.) and her Husband’s increasing indifference toward her and the children. The Husband stated he considered the Wife’s spending on ‘toys for the children, fast food and miscellaneous items,’ all of which he agreed were for the family, to be a problem. He also stated he was concerned about her care of the children and the fact that the younger children often slept with the Wife, ultimately resulting in the Husband relocating to another bedroom.
“Despite these concerns, the Husband continued to manage the parties’ financial affairs even encouraging the Wife to auction the family farm she inherited. The farm was sold in July 2006 and the *1061 net proceeds of over $230,000 were deposited to the parties’ joint RFCU savings account. The Husband paid off the family credit cards, made a $150,000 down payment on a $600,000 new home and paid off their automobiles. Due to his stated concern about the Wife’s spending, he placed the Wife on a budget of $1,200 to $1,500 per month. Banking records admitted to evidence by the Husband reveal, on occasion, sums were transferred by him from the RFCU joint account into a separate account for the Wife although, upon further analysis, it is apparent that the transfers to the Wife were actually monies from the joint savings account that was funded, at that time, almost exclusively by funds from the Wife’s inheritance. The Wife testified she terminated gymnastic and dance lessons for [one of the children] in an effort to appease her Husband regarding the alleged financial difficulties. She also met with her minister and his wife and arranged for couples counseling for her and the Husband. Her concerns remained the Husband’s extreme work hours and his increasing distance from her. The Husband refused to participate in the counseling after the first meeting.
“Following the failed counseling effort, the Wife engaged a private investigator. That inquiry revealed that the Husband was involved in a sexual affair with a co-employee. Evidence before the Court, including the Husband’s admission to the affair, testimony of the paramour and financial records, reveal the Husband’s extramarital sexual relationship began no later than the Spring of 2006 and continued at least until the early part of 2008.
“Financial records admitted to evidence revealed at the same time the Husband was complaining about the Wife’s spending for the children, he had purchased jewelry, including a ruby and gold pendant and a one-carat diamond, ring, an expensive Coach purse, a Thomas Kincaid print and flowers on a number of occasions for his girlfriend. He paid for meals at expensive restaurants on overnight, out of town travel with his girlfriend and lodging and limousine service while with her in Atlanta. Family credit cards revealed other purchases of jewelry, meals and items at women’s clothing stores (Ann Taylor, Victoria Secret, etc.) that the Wife did not recognize as purchases by or for her. The Husband stated he was unaware of the charges although a number of charges were on the same dates and same venues as the Husband’s travel with his paramour. Other records and testimony of the Husband confirmed that three weeks prior to the closing of purchase of the $600,000 home (funded by the Wife’s inheritance), the Husband and his girlfriend traveled to Greenville, South Carolina where numerous purchases were incurred on family credit cards. Three weeks following the closing, the Husband purchased the one-carat diamond ring for his paramour and met her in Atlanta, where he charged hotel, restaurant and limousine expenses on family credit cards. All of these expenses were paid from accounts funded primarily by the Wife’s inheritance and were incurred while the Husband withheld or intentionally misled the Wife regarding his marital misconduct. At trial, the Wife testified she would never have allowed the Husband access to her inheritance had he honestly disclosed his affair. Although the Husband admitted to having made ‘poor judgments,’ he made that concession only after he learned of the surveillance and that his affair was discovered. In the words of an elder from his church, the Husband’s primary sorrow was ‘that he had been caught.’ When the Wife filed her complaint for *1062 divorce in January 2008 less than one month after learning of the affair, her inheritance had been totally depleted. The Court expressly finds the Husband repeatedly deceived and misled the Wife regarding his affair and his reckless misuse of the parties’ financial accounts.”
Based on those factual findings, the trial court, among other things, divorced the parties on the grounds of incompatibility and adultery committed by the husband; awarded the wife sole physical custody of the parties’ children and awarded the husband visitation;[2] awarded the wife child support in the amount of $1,780 per month;[3] awarded the wife alimony in gross in the amount of $150,000; awarded the wife periodic alimony in the amount of $1,600 per month for 60 months; awarded the wife an attorney fee in the amount of $20,000; awarded the wife a private-investigator fee in the amount of $3,000; awarded the wife COBRA health-insurance benefits to be paid for by the husband if they were available or, if they were not available and the wife secured her own health-insurance coverage, awarded the wife up to $250 per month for 36 months as additional periodic alimony to be applied to the payment of the premiums for that coverage; and divided the parties’ personal property.[4] The trial court awarded the wife the following personal property:
1. the personal property she had owned before the marriage or had inherited or had received by gift during the marriage and her personal effects;
2. the 2005 GMC Yukon automobile;
3. the balance of any banking account in her individual name;
4. one-half of the balance in any banking or financial account in both of the parties’ names;
5. the furniture and furnishings presently in her possession, with exception of the following items awarded to the husband:
a. a patio set,
b. two collector dolls of the wife’s selection, and
c. one television of the wife’s selection;
6. one-half of the vested interest of the husband in the following retirement plans and accounts:
a. Siemen’s-Continental 401 (k) Plan,
b. Continental Pension Plan, and
c. GM Pension Plan; and
7. a $ 1,250 check payable to the parties jointly.
The trial court awarded the husband the following personal property:
1. the personal property he had owned before the marriage or had inherited or *1063 had received by gift during the marriage and his personal effects;
2. the 2005 Dodge Ram truck;
3. the balance of any banking account in his individual name;
4. one-half of the balance in any banking or financial account in both of the parties’ names;
5. the furniture and furnishings presently in his possession and the following items in the wife’s possession:
a. a patio set,
b. two collector dolls of the wife’s
selection, and
c. one television of the wife’s selection;
6. one-half of his vested interest in the following retirement accounts:
a. Siemen’s-Continental 401 (k) Plan,
b. Continental Pension Plan, and
c. GM Pension Plan.
The husband timely filed a post-judgment motion challenging the judgment on several grounds. First, citing Ex parte Dickson, 29 So.3d 159 (Ala.2009), the husband asserted that the trial court had erred in awarding the wife alimony in gross in the amount of $150,000 because, he said, that award exceeded the value of his estate at the time of the divorce, which, according to the husband, consisted of the following:
1. Renasant checking account in the amount of $12.78;
2. Listerhill savings account with a value of less than $100.00;
3. one-half of a Siemen’s-Continental 401(k) plan with a value of $21,036.44;
4. one-half of a Continental Pension Plan with a value of $7,454.85; and
5. a Dodge Ram truck with an estimated value of $10,000.00 to $11,000.00.[5]
Second, the husband asserted that the trial court had erred in awarding the wife periodic alimony in the amount of $1,600 per month for 60 months because, he said, the evidence had established that he would not have the financial means to pay it. Specifically, he asserted that he had been laid off from his job at Continental in January 2009, that his severance pay would terminate in September 2009, that he had not been able to find another job, that his net income from his severance pay had been $5,412.82 in March 2009 and $5,261.63 in April 2009, and that his minimum basic living expenses were $1,605.31.
Third, the husband asserted that the trial court had erred in awarding the wife an attorney fee in the amount of $20,000 and a private-investigator fee in the amount of $3,000 because, he said, he did not have the financial means to pay those awards.
In response to the husband’s post-judgment motion, the wife asserted that, as an alternative to her claim for alimony in gross, she had stated a claim for damages due to the husband’s misuse of her inheritance from her parents and that, even if the award of alimony in gross was due to be reduced because it exceeded the husband’s estate at the time of the divorce, she was entitled to recover $150,000 on her claim for damages. The wife also moved the trial court to alter or amend the judgment to award her alimony in gross in an amount equal to the husband’s separate estate at the time of the divorce and to award her the balance of the $150,000 as damages for the husband’s misuse of her inheritance or, in the alternative, to award her $150,000 as damages for the husband’s misuse of her inheritance in lieu of awarding it to her as alimony in gross.
*1064 Following a hearing on the parties’ post-judgment motions, the trial court entered an order stating, in pertinent part:
“This matter came on before the Court on motions filed the [husband] and the [wife], each requesting relief pursuant to Rule 59 to the Alabama Rules of Civil Procedure. The Court has considered the pleadings filed by both parties, stipulations of the parties and argument of their respective counsel regarding the post-judgment motions. The Court has also considered the recent decision of the Alabama Supreme Court in [Ex parte Dickson, 29 So.3d 159 (Ala.2009),] regarding the alimony in gross in the Final Decree of Divorce in this matter. Based upon consideration of the above, the Court makes the following findings and orders:
“CONCLUSIONS OF LAW AND FINDINGS OF FACT
“A. Upon consideration of the standards set out in [Ex parte Dickson], supra, the Court expressly finds that the alimony in gross awarded to the [wife] in the case considerably exceeds the value of the [husband’s] estate at the time of the divorce. Accordingly, the parties’ Rule 59 motions on that issue are to due to be granted and that portion of the Final Decree is due to be altered or amended.
“B. Our case law is clear that no fixed standard or mathematical formula exists for dividing properties in a divorce proceeding. The proportion or share of property given to each spouse is required only to be equitable and graduated according to the particular facts and circumstances presented in each case. Antepenko v. Antepenko, 549 So.2d 1357 (Ala.Civ.App.1989). When dividing marital property and determining the need for support, the trial court considers a number of factors, including the length for the marriage, age and health of the parties, future prospects of the parties, the source, type and value of the properties, the standard of living to which the parties have become accustomed during the marriage and the fault of the parties contributing to the breakup of the marriage. Pate v. Guy, 942 So.2d 380 (Ala.Civ.App.2005), Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996).
“C. The Final Decree of Divorce in this matter contains a lengthy finding of facts regarding the parties’ conduct toward one another in financial and personal matters. In summary, the Court expressly found that the [husband] ‘repeatedly deceived and misled the [wife] regarding his affair and his reckless misuse of the parties’ financial accounts’ and that this behavior significantly impacted the ‘financial and emotional well-being of the [wife] and the parties’ three children.’ Those findings have not been altered nor are they challenged in any of the pleadings.
“D. During trial, both parties testified at length regarding the assets they acquired diming the marriage and those that remained at time of the hearing. The Court has considered that testimony as well as exhibits admitted to evidence by the parties, including the [husband’s] Domestic Relations Financial Statement in which he listed the values of the properties in his possession and those in the possession of the [wife]. Based upon that review, the Court finds that the [husband’s] valuation of his separate estate, including items of personal property retained in his possession but excluding the one-half of retirement accounts awarded to the Wife, totaled over $84,000.00.
[[Image here]]
“Based upon the above findings of fact and conclusions of law, considered with the pleadings filed by the parties in this *1065 cause, both at trial and in their Rule 59 motions, the Court ORDERS as follows:
“1. Paragraph 17 of the Final Decree [dealing with alimony in gross] is vacated in its entirety and the following is substituted in lieu thereof:
“The Wife is awarded the sum of $65,000.00 as alimony in gross to be paid by the Husband. The Court has considered the Husband’s expenditure of family funds, including, in large measure, the entire inheritance received by the Wife from the estates of her mother and father, during a period of time he deceived and misled the Wife regarding his extra-marital affair and exhibits admitted to evidence, including the [husband’s] Domestic Relations Financial Statement with his inventory of properties and values. Based upon that review, the Court finds that the [husband’s] valuation of his separate estate including items of personal property retained in his possession but excluding the one-half of retirement accounts awarded to the Wife, totaled over $84,000.00.
“The Husband may satisfy this award by payment in full within 30 days of the date of this Order or, at his option, by payment in monthly installments to the Wife as follows:
“(a) Payments of $300 per month so long as the Husband is paying periodic alimony is due to the Wife pursuant to this Order; and, thereafter,
“(b) Upon termination of the periodic alimony payments, payments of $1,000 per month until such time as the judgment is satisfied in full.
“(c) Payments shall begin on the first day of the month immediately following entry of this Order and continue due and payable on the first day of each month thereafter until the judgment is satisfied in full. The [husband’s] obligation shall be reduced by any payments made by him pursuant to the earlier order in this matter.
[[Image here]]
“3. All remaining claims of the parties, except to the extent awarded herein, are DENIED.”
The husband then timely appealed to this court.
Because the trial court received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
Citing Ex parte Dickson, supra, the husband first argues that the award of $65,000 in alimony in gross is erroneous because, he says, it exceeds the value of his estate at the time of the divorce. Specifically, he argues that his estate at the *1066 time of the divorce consisted of the following:
a. one-half of the $56,982.59 total value of his retirement accounts, which equals $28,491.29;
b. the $10,050 value of his Dodge Ram truck; and
c. a bedroom suite with a value between $12,000 and $15,000.
Thus, the husband argues that, at most, his estate at the time of the divorce had a value of $53,541.29 and, therefore, that the award of $65,000 in alimony in gross exceeds the value of his estate at the time of the divorce.
However, the husband ignores the document titled “Defendant’s Domestic Relations Financial Statement” (“the financial statement”), which the husband introduced into evidence at trial as Defendant’s Exhibit 15. In the financial statement, which the trial court relied upon in calculating that the husband’s estate at the time of the divorce had a value in excess of $84,000, the husband lists the following values for property he was awarded by the divorce judgment other than the retirement accounts, the Dodge Ram truck, and the bedroom suite:
Denon home theater system $ 2,199.00
Sony camcorder 534.94
Panasonic Flat Screen 32" TV 899.00
paper shredder 39.99
college and sports memorabilia 793.06
Austin sculptures 336.98
furniture 2,252.90
Daniel Moore prints 10,775.00
patio set 499.00
outdoor tools, equipment, and sporting goods 9,926.40
iron and ironing board 129.00
John Deere Precision equipment 3,437.44
$31,822.71[6]
Adding the $31.822.71 value of the items of property listed above to the $53,541.29 value of the retirement accounts, the Dodge Ram truck, and the bedroom suite results in a total value of $85,364 for the husband’s estate at the time of the divorce. Therefore, his argument that the $65,000 award of alimony in gross exceeded the value of his estate at the time of the divorce has no merit. Consequently, we affirm the trial court’s judgment insofar as it awarded the wife alimony in gross in the amount of $65,000.
The husband perfunctorily argues that the trial court erred in awarding the wife an attorney fee in the amount of $20,000 and a private-investigator fee in the amount of $3,000 because, he says, those amounts are excessive; however, he has cited no legal authority in support of this argument. “We have unequivocally stated that it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument. Spradlin v. Spradlin, 601 So.2d 76 (Ala.1992).” Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994) Therefore, we find no merit in the husband’s argument that the award of an attorney fee in the amount of $20,000 and the award of a private-investigator fee in the amount of $3,000 were erroneous because they were excessive.
The husband also argues that the trial court erred in awarding the wife an attorney fee in the amount of $20,000 and a private-investigator fee in the amount of $3,000 because, he says, those awards constituted additional alimony in gross under the supreme court’s holding in Ex parte Dickson, supra, and the resulting total of $88,000 in alimony in gross exceeds his *1067 estate at the time of the divorce. However, the husband did not present that argument to the trial court. We cannot reverse the trial court’s judgment on the basis of an argument that the husband did not present to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). Accordingly, we affirm the trial court’s judgment insofar as it awarded the wife an attorney fee in the amount of $20,000 and a private-investigator fee in the amount of $8,000.
The husband also argues that the trial court erred in awarding the wife periodic alimony in the amount of $1,600 per month because, he says, the trial court considered only one factor in setting that amount, i.e., the husband’s adultery. We find no merit in that argument because it is apparent from the trial court’s judgment that, in addition to the husband’s adultery, the trial court considered other factors in setting the amount of the husband’s periodic-alimony obligation, such as the 13-year length of the marriage; the fact that the parties had agreed that the husband would work while the wife stayed at home and took care of the children and the household during the marriage; the fact that the husband had misused the wife’s inheritance, which would have provided a source of support for the wife following the divorce if he had not squandered it; the lifestyle the parties had enjoyed during the marriage; and the husband’s greater earning potential.
Finally, the husband argues that the trial court erred in awarding the wife periodic alimony in the amount of $1,600 per month because, he says, that award will financially cripple him because, he says, after he pays child support in the amount of $1,780 per month and periodic alimony in the amount of $1,600 per month, he will be left with only $1,814.69 to pay his basic monthly expenses in the amount of $1,605.31.[7] The husband cites Rubert v. Rubert, 709 So.2d 1283 (Ala.Civ.App.1998), and Wheeles v. Wheeles, 770 So.2d 635 (Ala.Civ.App.2000), in support of this argument. However, those cases are factually distinguishable from the case now before us.
In Rubert, the husband’s net income was approximately $4,300 per month, while his living expenses, not including any amounts he spent on the parties’ 19-year-old mentally ill son, were between $1,800 and $2,000 per month. Including the mentally ill son’s monthly expenses, the husband’s monthly living expenses totaled $2,500 to $2,800 per month. The trial court ordered the husband to pay the wife periodic alimony in the amount of $2,200 per month despite evidence indicating that her living expenses were only $1,800 per month. This court held that the trial court had erred in awarding the wife periodic alimony in the amount of $2,200 per month because that award exceeded the wife’s needs and would leave the husband with only $2,100 per month of his net pay with which to pay $2,500 to $2,800 per month in expenses for himself and the parties’ mentally ill son.
*1068 In Wheeles, the husband’s net income, including overtime pay was approximately $3,800 per month. However, he testified that overtime work, which had been plentiful in prior years, was no longer available as often as it had been in prior years. His basic living expenses were $1,627.98 per month. The trial court ordered him to pay child support in the amount of $1,044 per month and periodic alimony in the amount of $1,150 per month. Noting that, even the highest estimate of the husband’s income, i.e., $3,800, which presupposed the availability of overtime work, would leave the husband with only $1,230 to pay periodic alimony after paying his child support in the amount of $1,044 per month and his monthly expenses of $1,628, this court held that the trial court had erred in awarding the wife periodic alimony in the amount of $1,150 per month, which was only $80 less than the balance of the husband’s net income remaining after he paid his monthly child-support obligation and his basic expenses.
In the case now before us, the husband’s net income averaged $5,337.22 per month.[8] His basic living expenses are $1,605.31 per month. The trial court ordered him to pay $1,780 per month in child support and $1,600 per month in periodic alimony. After paying his monthly child-support obligation and his basic monthly expenses, he will be left with a balance of $1,951.91 each month to pay periodic alimony in the amount of $1,600 per month. Thus, he will be left with $351.91 of his net pay each month after paying his monthly child-support obligation, his monthly basic expenses, and the monthly periodic alimony awarded by the trial court. Accordingly, in the case now before us, the financial impact on the husband of the periodic alimony awarded by the trial court is substantially less than it was on the husbands in Rubert and Wheeles. Consequently, we find no error in the trial court’s awarding the wife periodic alimony in the amount of $1,600 per month in the case now before us, and we affirm that aspect of the trial court’s judgment.
The wife’s request for an attorney fee on appeal is denied.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Part of that $300,000 inheritance was a family farm, which the trial court refers to later in its findings of fact.

. The parties had stipulated that the wife should be awarded primary physical custody of the children.

. However, the trial court noted that the calculation of the child support was based on the husband's severance pay, which would terminate in September 2009, and, therefore, that the child support might have to be modified following the termination of his severance pay.

. While the divorce action was pending, the parties sold the marital residence at a loss in order to relieve themselves of their mortgage payments. They had purchased the marital residence for a price of $602,675.65 in 2006. They sold it for a price of $475,000 in 2008. At closing, the payoff for their first mortgage was $409,333.05, and the payoff for their second mortgage was $60,787.19. In addition, they were responsible for some of the closing costs, such as the real-estate agent's commission. The proceeds from the sale of the marital residence failed to cover $29,610.95 of the amount due from the husband and the wife at closing. Consequently, they had to pay that $29,610.95 out of their pockets.

. The husband’s estate at the time of the divorce also included one-half of a GM Pension Plan; however, the record does not indicate the value of his share of that pension plan.

. This figure does not include the two collector dolls or the television awarded the husband because those items were to be selected by the wife and the record does not indicate which collector dolls or television the wife selected.

. The husband does not argue that any of his other monthly financial obligations should be considered in determining whether the trial court erred in awarding the wife periodic alimony in the amount of $1,600 per month. Because "[i]t is not the function of this court to advocate a position on behalf of an appellant or to create a legal argument for the appellant,” Schiesz v. Schiesz, 941 So.2d 279, 289 (Ala.Civ.App.2006), we will consider only the husband's monthly obligations to pay child support, periodic alimony, and his basic expenses in determining whether the trial court erred in awarding the wife periodic alimony in the amount of $1,600 per month.

. It was $5,412.82 in March 2009 and $5,261.63 in April 2009. The average of those two amounts is $5,337.22.