MOORE, J.
h Johnathan Mayo appeals a summary judgment ordering him to pay the balance on a Citibank (South Dakota) NA MasterCard account, $16,233.84, plus contractual interest of 29.99% and an attorney fee of 25%. For the reasons expressed, we amend and affirm.

Procedural History

Citibank’s petition alleged that Mayo agreed to the terms of the account agreement when he opened the account; he failed to pay despite amicable demand; and Citibank had previously sent him a demand letter that complied with La. R.S. 9:2781, entitling it to an attorney fee. Mayo answered, in proper person, that all Citibank’s information was false and he never executed any document with respect to this MasterCard account.
Citibank then filed this motion for summary judgment. In support, it attached the affidavit of Leola Phenix, an agent for Citicorp Credit Services, which does debt collection for Citibank. She stated that Mayo applied for the MasterCard by phone on May 23, 2002; he received with the card a “card agreement” setting out all terms and conditions; he accepted these by using the card and making some payments; but he still owed $16,233.84. She attached certified copies of (1) the latest card agreement, dated June 2006, (2) Mayo’s monthly statements from June 2002 through February 2008, and (3) the last four checks for payments on the account. By statement of uncontested facts, Citibank asserted that the card agreement has been amended over the years, but Mayo consented to each change by continuing to use the card, and that the 2006 version attached to Ms. Phenix’s affidavit was the current version. In support of its motion for summary judgment, Citibank argued that Mayo had never contested this account, and because the card ^agreement specified acceptance by using the card, no signed agreement was necessary. Bank of Louisiana v. Berry, 94-576 (La.App. 5 Cir. 12/14/94), 648 So.2d 991.
Mayo opposed the motion, reiterating that Citibank had produced no document bearing his signature, only a copy of the card agreement, and that Ms. Phenix neither was an employee of Citibank nor had any personal knowledge of the account. By affidavit he asserted “no recollection of ever executing any document with regard to any credit card account that is the *962 subject of this lawsuit[.]” Mayo waived his appearance at the hearing.
After a brief hearing, the city court granted summary judgment as prayed for. Mayo retained counsel and filed this devol-utive appeal, raising three assignments of error. After receiving a copy of Mayo’s appellate brief, Citibank moved to supplement the record, pursuant to La. C.C.P. art. 1474 C(3), with copies of the discovery responses it had mailed to Mayo but not filed in the court record. The city court ordered supplementation on November 19, 2010.
Discussion
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The mover need not negate every essential element of the opponent’s claim, action or |sdefense; he need only point out the absence of factual support for one or more essential element. La. C.C.P. art. 966 C(l). If the opponent then fails to produce support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.; Babin v. Winn-Dixie La., 2000-0078 (La.6/30/00), 764 So.2d 37. Appellate courts review summary judgments de novo, using the same criteria that govern the lower court’s grant or denial of the motion. Hill v. Shelter Mutual Ins. Co., 2005-1783 (La.7/10/06), 935 So.2d 691.
By his first two assignments of error, Mayo urges the court was clearly wrong in holding the evidence sufficient to prove that he entered a contractual agreement with Citibank and in failing to assign any weight to his own affidavit disputing the account debt. He concedes that under Bank of Louisiana v. Berry, supra, no signed document was needed, but argues that Citibank failed to prove that he, Mayo, actually used the card. He shows that under 15 U.S.C. § 1643(b), the card issuer must prove that the use of the card was authorized, and argues that other jurisdictions have strictly enforced this. Crestar Bank NA v. Cheevers, 744 A.2d 1043 (D.C.App.2000); Michigan Nat’l Bank v. Olson, 44 Wash.App. 898, 723 P.2d 438 (1986). He also argues that if, as alleged by Citibank, this account was opened in 2002, it cannot possibly be governed by a card agreement dated June 2006, an anomaly which he contends defeated Citibank’s motion for summary judgment in Citibank South Dakota NA v. Stanford, 42,191 (La.App. 2 Cir. 5/9/07), 956 So.2d 756. Finally, he contends that Ms. Phenix’s affidavit was entitled to no weight as she works for a nonparty to the case and did not establish any personal knowledge of the claim, while by contrast his own |4affidavit swears “that he has never seen these statements prior to this litigation and * * ⅜ never used the card to incur any of the charges listed,” and hence creates a genuine issue.
Citibank concedes its burden of proving authorized use under 15 U.S.C. § 1643(b). It contends, however, that under another provision of the Consumer Credit Cost Disclosure law, 15 U.S.C. § 1666(a), any obligor who wishes to dispute a credit statement must give the creditor, within 60 days of the statement, written notice which “indicates the obligor’s belief that the statement contains a billing error and the amount of such billing error[.]” Citibank argues that Mayo never challenged any *963 statement; to the contrary, he made many payments and continued using the card. Citibank concludes that it is too late for Mayo to argue that his lengthy credit history was all unauthorized use.
The record fully supports Citibank’s position. The certified copies of Mayo’s monthly statements show thát he made two large balance transfers to this account, $5,000 in 2002 and $7,200 in 2004, which he paid off by April 2005; however, he made additional balance transfers of over $7,400 later in 2004 and a took a cash advance of $2,250 in 2006, after which he made only minimum payments. The final payment was a check drawn on Mayo and his -wife’s joint account for $323.00 on September 1, 2006, and signed by his wife. Simply put, Mayo never contested any statement as he might have under 15 U.S.C. § 1666(a); this distinguishes his position from that of the obligor in Michigan Nat’l Bank v. Olson, supra. Moreover, Mayo’s continued use of the card and solid payment history (at least until September 2006) refute any claim of persistent unauthorized use, unlike the situation in | Crestar Bank NA v. Cheevers, supra. The summary judgment evidence is not sufficient to create a genuine issue of material fact as to whether any or all of the charges to Mayo’s MasterCard were authorized.
The June 2006 version of the card agreement contains a paragraph labeled “Changes to this Agreement,” printed in boldface, stating that Citibank may change the terms of the agreement “at any time for any reason” and “these changes are binding on you.” It further states:
If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.
The record shows that after this notice of change took effect in June 2006, Mayo made a payment on the account on September 1, 2006, and took a cash advance of $2,250 on October 19, 2006. These actions constituted acceptance of the June 2006 agreement. Further, all the attachments to Ms. Phenix’s affidavit were certified as required by La. C.C.P. art. 967 A, thus distinguishing the case from Citibank South Dakota NA v. Stanford, supra.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967 A. Ms. Phenix’s affidavit stated that she was employed by Citicorp Credit Services Inc. (USA), which provides debt collection for Citibank; Citibank’s account records are electronically maintained on computer systems in the ordinary course of its business by persons with personal knowledge of the events, or from information | (¡transmitted by someone with personal knowledge of the events; as part of her job Ms. Phenix has access to these records and reviewed Mayo’s account history; and he still owed a balance of $16,233.84. This adequately established her connection to Citibank’s accounts and satisfied the requirement of personal knowledge. Ford Motor Credit Co. v. Jackson, 45,447 (La.App. 2 Cir. 8/11/10), 47 So.3d 558, writ denied, 2010-2273 (La.11/24/10), 50 So.3d 830. By contrast, Mayo’s affidavit stated merely that he had “no recollection” of executing any document with regard to the credit card account. This weak denial is conelusory and does not raise a sufficient disagreement with his established use of the card and payment history over a four- *964 year period to create a genuine issue of material fact. Row v. Pierremont Plaza LLC, 35,796 (La.App. 2 Cir. 4/3/02), 814 So.2d 124, writ denied, 2002-1262 (La.8/30/02), 823 So.2d 952; Sears, Roebuck & Co. v. Richardson, 32,951 (La.App. 2 Cir. 4/5/00), 759 So.2d 190. The city court did not err in finding this evidence sufficient to grant Citibank’s motion for summary judgment. These assignments lack merit.
By his third assignment of error, Mayo urges the court erred in granting summary judgment even though Citibank had not answered discovery requests. He argues that under La. C.C.P. art. 1467, these requests should be deemed admitted and the summary judgment should be vacated. As noted above, Citibank complied with La. C.C.P. art. 1474 B by not filing its discovery requests in the court record but by serving them on Mayo personally. After counsel made an issue of the apparent failure to comply, Citibank obtained supplementation of the record under La. C.C.P. art. 1474 C(3). This proves that Citibank answered Mayo’s interrogatories, requests [ 7for production and requests for admissions. There is no failure to complete discovery, and this assignment of error lacks merit.
On its own motion, however, this court notes that the June 2006 version of the card agreement, a certified copy of which was attached to Ms. Phenix’s affidavit and appears at page 22 of the appellate record, recites, “The Default APR equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater.” The maximum of 28.99% is reiterated on page 23. When the contract provides for interest, the court may award it only “at the rate agreed by the parties.” La. C.C. art. 2000; Hollenshead Oil & Gas, LLC v. Gemini Explorations, Inc., 45,389 (La.App. 2 Cir. 7/21/10), 44 So.3d 809. The judgment will be amended to change the rate of interest from 29.99 to 28.99%, but is in all other respects affirmed.

Conclusion

For the reasons expressed, the judgment is amended to reflect an interest rate of 28.99%, but is otherwise affirmed. Costs are to be paid by Johnathan Mayo.
AMENDED AND AFFIRMED.