PER CURIAM.
David Brown Damrich (“the husband”) and Lauren L. Damrich (“the wife”) were married on October 18, 2002. There are no" children of the marriage, although the parties have children from previous marriages. On June 28, 2012, the husband filed a complaint in the Jefferson Circuit Court seeking a.divorce.from the wife and a division of the assets and debts of the marriage. The wife filed a counterclaim seeking a divorce from the husband, a division of the assets of the marriage, an order requiring the husband to assume the debts of the marriage, an award of alimony, and an award of attorney fees.
After a hearing, the circuit court entered a pendente lite order on February 25, 2012, which, among other things, required the parties' to sell the marital residence and required the husband to pay the wife $2,000 per month in' pendente lite support.
A trial was held on August 16, 2013, and the circuit court entered a final judgment divorcing the parties on October 29, 2013. At that time the marital residence had been sold, but, as noted by the circuit court, there was a “substantial deficit” between the proceeds of the sale and the cost to pay off the remaining mortgage on the marital residence and the other expenses associated with vacating the marital residence. The circuit court included in its findings that “the [wife’s] actions contributed considerably to the substantial deficit.” Among other things not pertinent to the issues on appeal, the circuit court awarded the wife rehabilitative alimony in the monthly amount of $2,000 for 24 con *875 secutive months and reserved the issue of periodic alimony. It awarded each party one vehicle and allowed the parties possession of the items, of personal property that they had agreed upon on lists that the parties had provided. The ownership of. each disputed or unspecified item of personal property was specifically addressed in the divorcé judgment. The parties were required to pay their own attorney fees.
On November 12, 2013, the wife filed a motion to alter, amend, or vacate the judgment in which she argued that the circuit court had misinterpreted the evidence presented and that its property division and its alimony award were inequitable. On November 18, 2013, the husband filed a motion to alter, amend, or vacate the judgment in which he requested, among other things, an elimination or alteration of the alimony obligation. A hearing on the parties’ postjudgment motions was held on January 15, 2014, and, on January 24, 2014, the circuit court entered a judgment slightly altering the property division regarding certain household furnishings and increasing the amount of rehabilitative alimony awarded to $2,500 per month retroactive to November 1, 2013. The wife filed a timely notice of appeal on March 3, 2014. We construe her arguments as arguments seeking this court’s review of whether the circuit court erred by failing to order the husband to pay alimony in gross, by failing to award periodic alimony in an amount 'sufficient to allow her to enjoy the same standard of living that she had enjoyed during the marriage, and by failing to order the husband to pay her attorney fees.
“We begin by noting the appropriate standard of review in divorce proceedings. ‘Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they- are “unsupported by the evidence or [are] otherwise palpably wrong.” ’ Ex parte Bland, 796 So.2d 340, 344 (Ala.2000) (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990)). Also, when, as in this case, a trial court’s judgment is based on ore tenus evidence, the judgment is .presumed correct. Kennedy v. Kennedy, 743 So.2d 487 (Ala.Civ.App.1999). The presumption .of correctness under the ore tenus rule ‘is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility.’ Glazner v. Glazner, 807 So.2d 555, 559 (Ala.Civ.App.2001); Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).
“Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993); and Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996).
“In dividing property and awarding alimony, the trial court should consider ‘the earning abilities of the parties;. the future prospects of the parties; their ages and health; the duration of the marriage; [the parties’] station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce.’ Russell v. Russell, 777 So.2d 731, 733 (Ala.Civ.App.2000). Also, the trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996); Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). ‘A property division that fa *876 vors one party over another does not necessarily indicate an abuse of discretion.’ Fell v. Fell, 869 So.2d 486, 496 (Ala.Civ.App.2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala.Civ.App.1988)).”
Williams v. Williams, 905 So.2d 820, 826-27 (Ala.Civ.App.2004).
At the time of the trial, the husband was 50 years old and the wife was 49 years old. The husband testified that he was a medical doctor practicing obstetrics and gynecology in Birmingham before and after the parties’ marriage, and the wife described herself as a housewife. The parties’ joint federal income-tax documents for 2009 through 2012 were admitted into evidence. The husband reported an annual income of $511,878 in 2009, $461,047 in 2010, $465,417 in 2011, and $481,563 in 2012; no income was reported for the wife. The husband projected that his income in 2013 would be less per week than his income in 2012 because he was working one-half day less than he had in 2012 and because he had sold his interest in St. Vincent’s Outpatient Surgery Services to pay attorney fees and other bills. He said that his current gross income was $33,400 per month and that his current net income was $19,520 per month after he subtracted retirement and income-tax deductions. He offered a list of estimated monthly expenses into evidence indicating an average monthly budget of $26,370.[1]
The wife said that she had a bachelor’s degree in public relations and a minor in psychology and that, during the pendency of the divorce proceedings, she had “taken classes to do some substitute teaching.” She testified that she had no income. She offered into evidence a list of her estimated monthly expenses, which totaled $8,961 per month for rent, utilities, food, transportation, clothing, entertainment, medicine, and pet care. The total did not include monthly payments of approximately $5,000 on nine debts the wife asserted that she owed.
The husband said, that the wife had been an actress, a physical trainer, and a screenwriter. He testified that during the marriage he had not shared in the wife’s income, had not known whether she had any income, and had not reported any income of the wife on their joint tax-return documents.- According to the husband he had provided $100,000 for the wife to “live on the beach in Santa Monica” for three to six months per year during the last five years of the marriage so that the wife and her daughter could pursue careers in acting and screenwriting. The wife denied that she had lived in a beach house, but she admitted that the husband had provided the funds that she and her children had used to live in California and New York for extended periods, to pursue their careers, during the last four or five years of the marriage.
The parties testified that they, had each owned real property before the marriage. The husband said that they had both used the proceeds from the sales of those properties to purchase the marital residence, which was valued at $450,000 before it was renovated. He said that he had contributed approximately $90,000 from the sale of a property he had owned before the marriage and that the parties had acquired a $360,000 mortgage on the marital residence.. Due to a series of events during the renovation of. the marital residence into a 7,000-square-foot home, the husband had acquired a “half million dollar bridge loan” in' his name. The husband said that Ke had acquired another loan in *877 his name in the amount of $300,000 to finish the renovations. He agreed that he had spent $1,060,000 on the marital residence with the unrealized expectation that it would have an appraised value of $1,990,000. Instead, the finished marital residence had an appraised value only as high as $1,700,000. He testified that the wife had contributed approximately $132,000 toward the mortgage debt when she sold a property she had owned before the marriage;- the wife said, she had contributed $158,950.- •- ‘ :
While the marital residence was listed for sale, the husband moved out of the marital residence and the wife, hér children, and her dogs - lived in the marital residence. The husband testified and offered into evidence several e-mail messages from the parties’ realtor indicating that the ‘ marital residence was showing poorly because the marital residence was “a total mess,” which had resulted in fewer showings and, eventually, a lower asking price. The wife testified that she had-not read all thé numerous e-mail messages from the realtor that' had included potential buyers’ feedback because she was too sick, too busy, or too depressed to do so. Julie Tuck, the wife’s best friend, testified that the marital residence was clean, but she admitted that she had seen dog hair on the rugs and floors and dog feces on the driveway. The husband testified and offered into evidence photographs indicating that, once the house sold, the wife left the marital residence in a damaged and extremely unclean conditión; the wife said that she was in the hospital at the time the photographs were taken and that her children and dogs had caused the “disarray.” The husband incurred debts for additional repairs, for extensive cleaning, and for movers to remove items left in the marital residence. The wife did not deny that she had left the marital residence in an unlivable condition, but she said that she had been too sick to do otherwise. Tuck said that the wife was sick, depressed by the thought of the divorce, and could not “function,”
Regarding the “substantial deficit” noted by the circuit court, thé testimony indicated that on the date of the closing the parties owed $1,400,000 on the mortgage and that the marital residence sold' for $1,100,000, although it had once had an appraised value as high as $1,700,000. It is undisputed that the husband spent $331,439 for repairs, professional cleaning, closing costs, -realtor’s commission, and other fees and that the wife did not contribute to those expenses. The husband said that, to meet that financial obligation, he had incurred credit-card debt and had acquired a loan for which he was obligated to- make a monthly payment -of $5,451 for seven years. The husband requested a judgment requiring the wife to evenly split the $331,439 expense.
The husband said that he took “twelve pills a day.” He said: “I take Lymetsa [(sic)] — I take-diabetes medicine, cholesterol medicine, high blood pressure medicine. I take botanies.” He said that he was treated for kidney stones once or twice a year. The husband said that the wife suffered from and took “a lot of medication” for depression, anxiety, attention-deficit/hyperactivity disorder, and post-traumatic stress disorder. The wife said that she had also experienced shingles, insomnia, stomach ulcers, erratic blood pressure, weight loss, hair loss, and chest pains.
The wife testified that the husband was at fault for the breakdown of the marriage. The wife said that the- husband had a temper, used profanity, called her names, and -told her that everyone might be “better off’ if she were dead. The wife said that she had not had a sexual relationship *878 with the husband during the last year of the marriage and that during discovery she had confirmed that the husband began “dating” and taking the prescription medication Viagra shortly, before he. filed the complaint seeking a divorce. The husband admitted that he was engaged in a sexual relationship with a. coworker that began after the parties had separated; hpwever, the husband said that the wife was at fault for the breakdown of the marriage because the wife was away from home with her children too frequently and for too long and that the marriage lacked intimacy; he agreed that .they had not .had-, a sexual relationship for one year. He said that during discovery he had learned that- the wife had $18,000 in a banking account of which he had not been aware.. The wife said that the funds were derived from her inheritance. She offered confused, conflicting testimony regarding the banking account and the amount it contained, but she disputed that the husband had not known about the account.
The wife presents a three-part argument regarding her' first issue — that the circuit court erred by failing to compensate her with an award of alimony in gross for her contribution of $158,950 from her sepárate estate toward the expense of the marital residence. In essence, she argues that the circuit court unfairly based its judgment on its conclusion that the wife had contributed 'considerably to the “substantial deficit” incurred as a result of the sale of the marital residence. Specifically, the wife asserts that the circuit court erred (1) by concluding that the husband presented evidence indicating that she had contributed considerably , to the substantial deficit, (2) •by concluding- that -the husband had not misused her $158,960 contribution, and (3) by fashioning an inequitable property division.
In support of her first subargument, the wife cites cases standing for the proposition-that this court.is not required to give deference to a trial court’s determination when there is “no evidence” to support • its >. -determination. See, e.g., Williams, 905 So.2d at 826. The wife asserts that the husband did not allow her to have any input-into the renovations to the marital residence, that he mishandled the renovations, and that she had contributed the $158,950 because the husband had told her to do so. Regardless, we do not agree that there was no evidence presented that the wife contributed to the. substantial deficit. Even if we, agreed that there was no evidence before the circuit court indicating that any action of the wife contributed to the expense of the renovations to the marital residence, plenty of testimony and documentary evidence before the circuit court indicated that the wife failed to cooperate with the realtor or to make the marital residence presentable to potential buyers, which certainly resulted in a lower asking price and, therefore, contributed to the substantial, deficit. “Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are ‘unsupported by the evidence or [are] otherwise palpably wrong.’ ” Ex parte Bland, 796 So.2d.340, 344 (Ala.2000) (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990)).;. The circuit court did not err by determining that there was evidence demonstrating that the wife had contributed to the substantial deficit.
•The wife next argues that the circuit court erred by failing to compensate her for her $158,950 contribution because, she says, like the husband in Kiel v. Kiel, 51 So.3d 1058 (Ala.Civ.App.2010), the husband in this case “misused” her contribution. The - wife in Kiel had inherited $300,000, -and the parties had placed the funds in their joint banking accounts. 51 *879 So.3d at 1060. Thereafter, the husband in that case engaged in an adulterous relationship and spent the wife’s inheritance on expensive gifts and vacations with his paramour. Id. at 1061. , ■
Kiel is clearly distinguishable. In this case the proceeds from the sale of the wife’s separate property were used to pay a debt on the marital residence, in which the wife, and her children lived for nearly nine years. That use is not remotely similar to the misuse in Kiel. Moreover, the facts that the husband contributed $90,000 from the sale of his separate property, that there was no -equity-in the marital residence at the time of its sale, and that the circuit court made the husband responsible for all the joint marital debts in the amount of $331,439 further distinguish this case from Kiel and weaken the wife’s argument. As we often repeat, the circuit court is the best position to' determine the credibility of the testimony presented. Thus, even if we believed the wife’s assertion that the husband had misused - her contribution, which we do not, we would not substitute our judgment for that of the circuit court. See Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000).
The wife’s final subargument — that the circuit court erred by fashioning an inequitable property division--is equally unpersuasive. • “ ‘[-Pjroperty divisions. are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.’” Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Giv.App.1996) (quoting Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App.1995)). The wife argues that she contributed $158,950 and the “husband only contributed a payment^ of $90,000 on, the marital residence.” Although she concedes that the circuit court made the husband responsible for the entire joint marital debt, she says the error regarding her larger contribution is compounded by the circuit court’s award to the' husband of four automobiles, its award to the husband of the-sums in five checking accounts, and the facts that the husband had a lucrative career .and a well-funded retirement account. By contrast, the .wife argues, the. circuit court, awarded, her one vehicle and. the funds in one banking account.
The wife 'does not (and indeed cannot) cite authority supporting her argument that, in light of the husband’s responsibility for the entire, joint marital debt, the property division is inequitable. Furthermore, the judgment did not award the husband four automobiles; it awarded him a Tahoe vehicle, upon which, the husband said, seven payments remained at the time of the trial. The other vehicles to which the wife refers are the vehicles that the husband gave his children. Those vehicles were not specifically 'included in the divorce judgment. There was no" remaining indebtedness on the two vehicles that the husband had given to his two daughters, and the husband said that he was obligated to make monthly payments of $1,000 for 23 months to his former wife’s husband to purchase his former wife’s Range Rover for their, son. Rather than awarding the husband, that vehicle, the divorce judgment made the husband responsible for- all the debts in the husband’s name, which included the debt on the Range Rover vehicle. The wife also complains that the divorce judgment awarded the husband the funds in five checking accounts.. We note that three of those checking accounts are checking accounts that were jointly owned by the husband and each: one of his children, respectively.' The husband said that he attempted to keep a relatively low -balance of $500 to $1,000 in those three accounts for his children’s use. We conclude that, under the facts of the case, the circuit *880 court’s determination regarding the property division was not an abuse of its sound discretion. “In examining whether the' trial court’s property division amounts to an abuse of its discretion, th’e proper question to be resolved is whether the property division was equitable under the facts of the case.” Sumerlin v. Sumerlin, 964 So.2d 47, 49 (Ala.Civ.App.2007) (citing Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996)),
The wife’s second issue on appeal is whether the circuit court erred by failing to award periodic alimony in an amount sufficient to allow her to enjoy the same standard of living that she had enjoyed during the marriage. The circuit court awarded the wife rehabilitative alimony in the amount of $2,500 for 24 months. Rehabilitative alimony is a subclass of periodic alimony. See Enzor v. Enzor, 98 So.3d 15, 21 (Ala.Civ.App.2011). The purpose of rehabilitative alimony is' to allow a spouse to begin or to resume supporting himself or herself. Alfred v. Alfred, 89 So.3d 786 (Ala.Civ.App.2012); Enzor v. Enzor, 98 So.3d 15, 21 (Ala.Civ.App.2011).
At the time of the divorce trial, the wife was 49 years old, and the parties had no children together. During the marriage the wife and her children enjoyed a luxurious lifestyle. .It is undisputed that the husband earned a net monthly income of nearly $20,000, that the wife and her children lived in 7,000-square-foot home in Mountain Brook, and that the husband paid all of the wife’s living expenses, including providing for the wife and her daughter to pursue careers in the entertainment industry in California and New York. The wife, who had a college degree, testified to several health issues, but she does not allege that those issues restricted her ability to work.
In Clore v. Clore, 135 So.3d 264, 271 (Ala.Civ.App.2013), we 'affirmed a trial court’s award of 18 months of rehabilitative alimony -in the amount of $800 per month although the wife in that case had estimated monthly expenses of over $4,000. The trial court expressed its determination that the wife’s expenses were inflated, and we noted that the relatively healthy, educated wife had not found employment during the pendency of the divorce proceedings and had subsisted on the matching pendente lite award, which, we observed, indicated her ability to do so in the future. Although, like the circuit court in this case, we express no opinion on whether the wife in this case has inflated her estimated monthly living expenses, -we note that she is similarly situated to the wife in Clore because the wife in this case is also relatively healthy; well educated, and, despite her testimony that she • had sold two screenplays for a total of $2,500 in unreported income in two years, had not found employment.
Furthermore, as we explained in J.D.A. v. A.B.A., 142 So.3d 603, 614-15 (Ala.Civ.App.2013):
“[T]he wife’s estimation of the amount of periodic alimony that was required to guarantee her the same standard of liv- ■ ing that she had enjoyed during the marriage ignored ‘the impact [that] an award of periodic alimony [would] have on the financial condition of the [husband] and his ... ability to maintain the parties’ former marital lifestyle for himself.’ Shewbart v. Shewbart, 64 So.3d 1080, 1088 (Ala.Civ.App.2010) (citing O’Neal v. O’Neal, 678 So.2d [161] at 164 [ (Ala.Civ.App.1996) ]) (emphasis added).- ‘In considering the [husband’s] ability to pay [periodic alimony], the trial court should take into account all the financial obligations of the [husband], *881 including those obligations created by the divorce judgment.’ Id.”
The circuit court properly took into account preserving the husband’s former standard of living, in light of his financial obligations, along with preserving the wife’s former standard of living. In this case the husband estimated his monthly net income at $19,520. Our- reading of the document listing the husband’s estimated monthly expenses (see note 1, supra) reveals that the husband indicated that he had approximately $4,500 in living expenses ($19,520 - $4,500 = $15,020). The judgment divorcing the husband from his first wife required him to pay $1,000 per month in child support for.his son and $2,580 in living expenses for his daughters who were in college ($15,020 - $3,530 = $11,490).[2] The husband expended approximately $2,280 to provide cellular-telephone service and automobile insurance, maintenance, and taxes for himself and his children ($11,490 — $2,280 = $9,210).[3]' The divorce judgment obligated the husband to pay the entire marital debt in the amount of $5,451 per month ($9,210 - $5,451 = $3,759), and it obligated the husband to pay the wife $2,500 in rehabilitative alimony ($3,759 - $2,500 = $1,259). From the remaining $1,259, the husband will have to pay his listed expenses for life insurance, medical insurance, attorney fees, credit-card debt, and country-club dues in the approximate amount of $5,500, leaving a monthly deficit of $4,241. Thus it appears that, although the husband had a substantially higher earning capacity than the wife, his standard of living following the divorce will. also be curtailed. Gates v. Gates, 830 So.2d 746, 750 (Ala.Civ.App. 2002) (citing O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996)) (recognizing the “clássic financial morass” encountered upon divorce and explaining that the phrase to “to the extent'possible,” in the context of fashioning a periodic-alimony *882 award, recognizes that both parties will have to live on substantially less income). Therefore, given the facts of this case and noting that issues of property division and alimony must be considered together, we conclude that the wife has not demonstrated that the circuit court erred in awarding the wife rehabilitative alimony in the amount of $2,500 for 24 months and reserving the issue of periodic alimony.
Finally, the wife cites Allen v. Allen, 58 So.3d 960 (Ala.Civ.App.2010), in support of her last issue on appeal— whether the circuit court erred by failing to order the husband to pay her attorney fees.[4] However, as we explained in Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996), The circuit court had the discretion to decide whether to require the husband to pay the wife’s attorney fees. We will not reverse the circuit^ court’s discretionary decisions unless we are convinced that it ““‘committed a dear or palpable error, without the correction- of which manifest injustice will be done.” ’ ’’ D.B. v. J.E.H., 984 So.2d 459,, 462 (Ala.Civ.App.2007) (quoting Clayton v. State, 244 Ala. 10, 12, 13 So.2d 420, 422 (1942), quoting in turn 16 C.J.,453). The circuit court did not commit reversible error by not awarding the wife attorney fees.
“[w]hether to award an attorney fee in a domestic relations ease is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figwres, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).?’
For the reasons expressed in this opinion, the dreuit court’s judgment is affirmed. The husband’s and the wife’s requests for awards of attorney fees on appeal are denied.
AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing,

. The husband’s "income and expense sheet” conflated monthly, annual, and temporary expenses. It also appears that a few expenses are represented on more than one line.

. The judgment divorcing the husband from his first wife is included in the record, and it reveals that the husband was contractually obligated to pay 100% of his children's expenses when they entered college. At- the time of the trial, two of the husband’s children were enrolled at the University of Alabama. We have not included tuition costs as part of the husband’s expenses because the husband indicated that he derived the funds for his payment of that expense from 529 college-savings accounts that he had funded in the past and because testimony indicated that one of the daughters had a full scholarship.
The wife argues that the husbhnd’s payment of his daughters' sorority expenses and “living expenses” amount to gratuitous undertakings that may not be considered'by-a trial court in fashioning an alimony award. See Sosebee v. Sosebee, 896 So.2d 557, 562 (Ala.Civ.App.2004).
First, the husband's estimated-monthly-expense sheet appears-to indicate that he paid the daughters’ sorority expenses and "extra” expenses from funds in the 529 accounts that he had funded in the past; however, we have included those expenses (in the total amount of $2,530) out of an abundance of cáution. If the husband pays those expenses from his . monthly income and if we were to assume, without deciding, that those expenditures are gratuitous undertakings, we would not include $2,530 as part of the husband’s monthly expenses, and the husband would have a shortfall of $1,714, rather than $4,241, between his monthly income and his monthly expenses. Thus, regardless of whether the wife is correct, applying the holding of Sose-bee would not alter our conclusion as to this issué. (The wife ■ also argues that the hus- - band’s payment of the children’s cellular-telephone expenses are additional gratuitous undertakings;. .however,, a subtraction of that . expense would, likewise, not alter our conclusion. Furthermore, we note'that the wife included a cellular-telephone expense of $175 on her list of living expenses.) -

. We have not included the husband’s claimed $1,128 automobile payment because he testified that he was within seven months of paying off that expense at the time of the trial.

." In Allen, we reversed the judgment and remanded the cause when the trial court felled to uwnrd attorney fees to the wife in that ease who suffered from three forms of cancer, kidney disease, chronic obstructive pulmonary disease, diabetes, and depression; she received the "meager” amount of $600 per month in disability benefits. 53 So.3d at 963, 966,